## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| FRESH & EASY, LLC,[1] | : | Case No. 15-12220 (CSS) |
| | : | |
| Debtor. | : | |
| | : | |

**DEBTOR'S MOTION FOR ENTRY OF ORDER, PURSUANT TO SECTIONS 105(a), 365(a), AND 554 OF THE BANKRUPTCY CODE, AND BANKRUPTCY RULE 6004, AUTHORIZING THE DEBTOR TO REJECT CERTAIN UNEXPIRED LEASES AND CERTAIN RELATED SUBLEASES OF NONRESIDENTIAL REAL PROPERTY, *NUNC PRO TUNC* TO THE PETITION DATE, AND ABANDON ANY PROPERTY THAT REMAINS ON THE PREMISES COVERED BY SUCH LEASES AND SUBLEASES**

> **ANY PARTY RECEIVING THIS MOTION SHOULD LOCATE ITS NAME AND ITS LEASE OR SUBLEASE IDENTIFIED ON <u>EXHIBIT 1</u> TO THE PROPOSED ORDER**

The above-captioned debtor and debtor in possession (the "Debtor") submits this motion (the "Motion") for entry of an order (the "Proposed Order"), pursuant to sections 105(a), 365(a), and 554 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor, *nunc pro tunc* to the Petition Date (as defined herein), to (a) reject certain unexpired leases of non-residential property, including any amendments or modifications thereto (each a "Lease, and collectively the "Leases"), (b) reject certain related unexpired subleases of non-residential property, including any amendments or modifications thereto (each a "Sublease" and collectively, the "Subleases"), and (c) abandon any personal property that remains on the

---

[1] The last four digits of the Debtor's federal taxpayer identification number are 8906. The Debtor's mailing address is 20101 Hamilton Avenue, Suite 350, Torrance, CA 90502.

premises subject to the Leases or Subleases.  In support of this Motion, the Debtor respectfully states as follow:

<h3 align="center">JURISDICTION AND VENUE</h3>

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dates as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 105(a), 365(a) and 554 of the Bankruptcy Code, and Rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

<h3 align="center">BACKGROUND</h3>

**A.      General**

3.      On October 30, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Concurrently with this Motion, the Debtor has also filed certain other motions and applications seeking certain "first day" relief to enable the Debtor to maximize the value of its assets through a liquidation of its assets.

4.      The Debtor has continued in possession of its properties and operates its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No request has been made for the appointment of a trustee or examiner and no official committee has been established in this chapter 11 case.

6.      Additional information about the Debtor's business and the events leading up to the Petition Date can be found in the *Declaration of Amir Agam in Support of Chapter 11*

2

*Petition and First Day Motions* (the "First Day Declaration"), which is incorporated herein by reference.

**B.       Background Regarding Leases and Subleases**

7.       As described in the First Day Declaration, the Debtor is a grocery chain operating in California, Nevada and Arizona, that focuses on healthy and wholesome foods, including prepared foods, at affordable prices.  As of the Petition Date, the Debtor operated approximately 97 retail locations.

8.       In recent years, the grocery industry, including the Debtor's business, has been hurt by increased food costs and rising competition from local, regional and national brands.   New advertising campaigns, operational improvement initiatives and cost-cutting programs implemented by the Debtor have successfully mitigated certain negative effects on its business; however, the Debtor has not been immune to the effect of rising food prices and increased competition in the California, Arizona and Nevada markets, and its financial performance has suffered significantly.  After thoroughly exploring its restructuring alternatives pre-petition, and ultimately determining that there were no viable options to preserve the Debtor as a going concern, the Debtor initiated liquidation efforts and has begun winding down its operations to maximize value for its estate and all interested parties.

9.       The Debtor evaluated, explored and, indeed, exhausted all available strategic alternatives as part of its overall turnaround efforts prior to filing for chapter 11 protection.  To that end, and in an effort to reduce costs and stem losses, the Debtor terminated its retail activity at 64 retail locations in the 7 months preceding the Petition Date.  The Debtor then began a process to market the leases of the retail locations and the locations of 6 additional properties which had never opened retail operations.  The Debtor successfully assigned 19 of these locations to third parties, and is attempting to assign 6 other locations.  In addition, the

3

Debtor has successfully negotiated lease terminations for 3 additional locations. Upon commencing this proceeding and making preparations in conjunction therewith, the Debtor determined that it is in the estate's best interests to vacate those remaining properties and reject all applicable leases or subleases for the reasons set forth below. On or before the Petition Date, the Debtor physically vacated the properties and surrendered the keys, alarm codes or other means of access to the respective counterparties to the Leases (collectively, the "Counterparties"), thereby affording such Counterparties the ability to re-let the applicable Premises (the "Leased Premises"). In most cases, this was done and accompanied by a letter announcing the Debtor's intentions, and actually delivering, the unequivocal surrender of the applicable Leased Premises before or on the Petition Date. With respect to the Subleases, the Debtor has advised its subtenants that it has initiated a bankruptcy proceeding and alerted the Sublease counterparties of the Debtor's intent to reject the Subleases (and related Leases) effective as of the Petition Date.[2]

10.    After assessing the terms of each Lease and any applicable Sublease, and the relevant retail lease market conditions in each applicable location, the Debtor believes that it could not assume and assign the remaining Leases in a manner that would provide any economic benefit to the Debtor's estate. Indeed, despite its best efforts to market the Leases prepetition, the Debtor has been unable to locate a third party willing to accept an assignment of the Leases. Thus, to avoid the accrual of unnecessary administrative expenses, as well as the attendant cost of continuing to market the Leases that would arise absent the rejection of the Leases and Subleases, the Debtor has determined, in an exercise of its sound business judgment, to reject the

---

[2]    There are three Subleases at issue. The subtenants are Dollar Tree Stores, Inc. (in Arcadia, California), General Nutrition Corporation (in Walnut Creek, California) and Carter's Retail, Inc. (in Hayward, California).

4

Leases and Subleases *nunc pro tunc* to the Petition Date.  In total, the Debtor is seeking to reject 42 Leases and 3 Subleases.

## RELIEF REQUESTED

11.    By this Motion, the Debtor requests the entry of an order authorizing and approving, effective *nunc pro tunc* to the Petition Date, the Debtor's (a) rejection of the Leases set forth on Schedule 1 to the Proposed Order attached hereto as Exhibit A, (b) rejection of the Subleases set forth on Schedule 2 to the Proposed Order, and (c) abandonment of any personal property that remains on the Leased Premises as of the date such Leased Premises were surrendered to applicable Counterparties.

## BASIS FOR THE RELIEF REQUESTED

**Leases to be Rejected**

12.    The Leases to be rejected provide no benefit to the Debtor's estate.  By rejecting the Leases, the Debtor believes that it will be able to save approximately $14 million per year (in rent and other obligations under the Leases such as property taxes, utilities, insurance, and other related charges).  The Debtor has ceased operations and vacated the Leased Premises and has already returned the keys to the applicable Counterparties together with a letter sent prepetition unequivocally surrendering the Leased Premises and abandoning personal property remaining therein.  The Debtor has determined in its business judgment that the costs associated with the Leases constitute an unnecessary drain on the Debtor's limited resources, especially given the decision to liquidate and wind down the Debtor's affairs.

13.    After careful consideration, the Debtor also has determined that the costs of the Leases not already subject to Subleases exceed any marginal benefits that may be received from potential assignments or subleases.  In considering its options with respect to the Leases prior to the Petition Date, the Debtor and its advisors evaluated the possibility of certain

5

assignments or subleases of the Leases. The Debtor determined that the transactional costs and postpetition occupancy costs associated with marketing the Leases exceed any marginal benefit received from potential assignments or subleases.

**Subleases to be Rejected**

14.    Prior to the Petition Date, the Debtor entered into the three Subleases identified above. In considering its options with respect to those Subleases, the Debtor has determined in its business judgment that the costs and risks associated with the Subleases exceed any marginal benefits therefrom. In all instances, the amount received by the Debtor under the Subleases is lower than the amount owed by the Debtor under the terms and conditions of the applicable Lease.

**Rejection of the Leases and Subleases**
**Reflects the Debtor's Sound Business Judgment**

15.    Section 365(a) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."[3] Courts have interpreted section 365 as allowing "a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed."[4]

16.    The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor.[5] The business judgment standard

---

[3]    *See Univ. Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d 1065, 1075 (3d Cir. 1992).

[4]    *In re Rickel Home Centers, Inc.*, 209 F.3d 291, 298 (3d Cir. 2000) (quoting *Stewart Title Guar. Co. v. Old Republic Nat'l Title Co.*, 83 F.3d 735, 741 (5th Cir. 1996)).

[5]    *See In re Taylor*, 913 F.2d 102, 107 (3d Cir. 1990); *Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); *see also In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003).

6

mandates that a court approve a debtor's business decision, unless the decision "is the product of bad faith, or whim, or caprice."[6] Upon finding that a debtor has exercised its sound business judgment in determining that rejection of certain contracts or leases is in the best interests of its creditors and all parties in interest, a court should approve the rejection under section 365(a) of the Bankruptcy Code.[7]

17.    To the extent that the Debtor's rejection of the Leases does not terminate the Debtor's obligations under the related Subleases, the Debtor also seeks to reject the Subleases.  When a lease is deemed rejected pursuant to section 365(d)(4) of the Bankruptcy Code, courts in this district have held that any subleases under the primary lease also must be deemed rejected since the sublessee's rights in the property extinguish with those of the lessor.[8] However, out of an abundance of caution, the Debtor seeks to reject the Subleases to ensure that its estate is not incurring further liabilities thereunder during the ongoing liquidation.[9]

18.    The rejection of the Leases and Subleases reflects the Debtor's exercise of sound business judgment and is in the best interests of the Debtor, its estate, and its creditors.

---

[6]    *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) (internal citations omitted); *see also Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) ("In any event, court approval under Section 365(a), if required, except in extraordinary situations, should be granted as a matter of course").

[7]    *In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *In re Bradlees Stores, Inc.*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996), *appeal dismissed*, 210 B.R. 506 (S.D.N.Y. 1997); *In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

[8]    *Chatlos Systems, Inc. v. Kaplan*, 147 B.R. 96, 100 (D. Del. 1992) (holding that (a) debtor's rejection of prime lease also causes rejection of sublease since the sublessee's rights are tied to and extinguished along with the sublessor's and (b) upon rejection of prime lease, the debtor sublessor is without any statutory, contractual, or possessory rights to evict or remove the sublessee).

[9]    It should be noted that pursuant to the governing documents, in the case of Dollar Tree Stores, Inc., the subtenant will become a direct tenant with the landlord, and in the cases of General Nutrition Corporation and Carter's Retail, Inc., the Subleases shall terminate upon the Debtor's surrender of possession of the applicable Leased Premises.

The Debtor also has ceased all operations at the Leased Premises, and such premises currently are vacant (except for the subtenants who, as noted above, have been advised of the Debtors' surrender of the Leased Premises and request to reject the Leases and Subleases as of the Petition Date). Nevertheless, the Debtor is required to pay approximately $1.2 million per month (excluding amounts received under Subleases) to comply with its obligations under the Leases. In many instances, the amount received by the Debtor under a Sublease is less than the amount owed by the Debtor under the terms and conditions of the corresponding Lease. The Debtor has determined that the Leases and Subleases are no longer necessary for the Debtor's business operations and the success of this chapter 11 case. The Leases and Subleases are not a source of potential value for the Debtor's future operations, creditors, or interest holders, are not marketable in the liquidation context, and constitute an unnecessary drain on the Debtor's limited resources.

### *Nunc Pro Tunc* **Rejection is Appropriate**

19.     The Debtor also respectfully requests that the Court authorize the rejection of the Leases and Subleases, *nunc pro tunc* to the Petition Date. While section 365 of the Bankruptcy Code does not specifically address whether the Court may order rejection to be effective retroactively, many courts in this district and others have held that bankruptcy courts may authorize rejection retroactive to a date prior to entry of the order authorizing rejection.[10]

---

[10]     *See Republic Underwriters Ins. Co. v. DBSI Republic, LLC (In re DBSI, Inc.)*, 409 B.R. 720, 734 (Bankr. D. Del. 2009) (providing that bankruptcy court may enter lease rejection order with an effective date earlier than the date the order is entered); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (acknowledging that bankruptcy court may approve a rejection retroactive to the date the motion is filed after balancing equities in a particular case); *see also In re Phila. Newspapers, LLC*, 424 B.R. 178, 185 (Bankr. E.D. Pa. 2010) (permitting rejection of executory contract retroactive to motion filing date and finding "the decision to grant retroactive rejection of a lease or contract is dictated by equitable considerations"); *BP Energy Co. v. Bethlehem Steel Corp.*, Case No. 02-civ-6419, 2002 WL 31548723, at *2-3 (S.D.N.Y. Nov. 15, 2002) (finding that bankruptcy courts' equitable powers allow for retroactive rejection date of executory contracts when favored by "balance of the equities").

8

Further, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

20.     Here, the balance of equities favors authorizing the Debtor to reject the Leases and Subleases, *nunc pro tunc* to the Petition Date.   Without the authority to reject retroactively, the Debtor will be forced to incur potential administrative expenses for agreements that provide no benefit to the Debtor's estate.  Further, allowing the Debtor to reject the Leases and Subleases will not unduly prejudice the counterparties to these agreements because such counterparties will receive notice of the Motion and, therefore, will have sufficient opportunity to object if they so choose.  Indeed, the Counterparties to the Leases may benefit from rejection because they will be relieved of their own obligations under the respective agreements and will be able to re-let the currently vacant premises immediately.   Courts in this jurisdiction and elsewhere have approved relief similar to that requested herein.[11]   The Debtor respectfully submits that similar relief is warranted in this chapter 11 case.

## Authorizing the Debtor to Abandon any Personal Property
## Remaining at the Leased Premises as of the Petition Date is Appropriate

21.     The Debtor believes that it has already properly vacated the Leased Premises, and that no further estate property remains at those locations.  In the event, however,

---

[11]     *See, e.g., In re Furniture Brands International, Inc.,* Case No. 12-12329 (CSS) Bankr. D. Del. Oct. 3, 2013) (authorizing rejection of leases and subleases effective as of date debtors turned over keys to premises to landlord*); In re Southern Air Holdings, Inc.,* Case No. 12-12690 (CSS) (Bankr. D. Del. Nov. 14, 2012) (same); *In re Friendly Ice Cream Corp.,* Case No. 11-13167 (KG) (Bankr. D. Del. Oct. 24, 2011) (authorizing rejection of leases *nunc pro tunc* to date debtors vacated premises); *In re Harry & David Holdings, Inc.,* Case No. 11-10884 (MFW) (Bankr. D. Del. Apr. 27, 2011) (authorizing rejection of "dark store" leases *nunc pro tunc* to petition date); *In re CB Holding Corp.,* Case No. 10-13683 (MFW) (Bankr. D. Del. Dec. 13, 2010) (entering omnibus order authorizing rejection of certain unexpired leases for closed restaurants *nunc pro tunc* to petition date); *In re Visteon Corp.,* Case No. 09-11786 (CSS) (Bankr. D. Del. June 23, 2009) (authorizing rejection of leases *nunc pro tunc* to petition date); *In re Sun-Times Media Grp., Inc.,* Case No. 09-11092 (CSS) (Bankr. D. Del. Apr. 28, 2009) (same); *In re Buffets Holdings, Inc.,* Case No. 08-10141 (MFW) (Bankr. D. Del. Feb. 13, 2008) (authorizing rejection of leases *nunc pro tunc* to petition date); *see also, e.g., In re Archbrook Laguna Holdings LLC,* Case No. 11-13292 (SCC) (Bankr. S.D.N.Y. Sept. 7, 2011) (authorizing rejection of contract *nunc pro tunc* to prior notice date); *In re TerreStar Networks Inc.,* Case No. 10-15446 (SHL) (Bankr. S.D.N.Y. Mar. 23, 2011) (authorizing rejection of executory contracts *nunc pro tunc* to prior notice date).

54567/0001-12435952v5

that personal property of *de minimis* value remains at any of the locations subject to the Leases, including, but not limited to, furniture, fixtures and equipment (collectively, the "Personal Property"), the Debtor hereby requests this Court's approval of the Debtor's abandonment of that Personal Property *nunc pro tunc* to the Petition Date, pursuant to section 554(a) of the Bankruptcy Code.

22.    Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the [debtor] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The right to abandon is virtually unfettered, unless abandonment of the property will contravene laws designed to protect public health and safety and the property poses an imminent threat to the public's welfare. *See In re Midlantic Nat'l Bank*, 474 U.S. 494, 501 (1986). Neither of these limitations is relevant under the instant facts.

23.    The Debtor submits that any Personal Property remaining in the Leased Premises is of inconsequential value or burdensome to the Debtor's estate to remove. The Debtor believes that the cost of retrieving, marketing and reselling the abandoned Personal Property outweighs any recovery that the Debtor and its estate could reasonably hope to be attained for such Personal Property. As a result, the Debtor has determined, in its business judgment, that the abandonment, effective as of the Petition Date, of any such Personal Property is in the best interests of the Debtor, its estate and creditors.

24.    In light of the foregoing facts and circumstances, the Debtor respectfully submits that its rejection of the Leases and Subleases under section 365(a) of the Bankruptcy Code, *nunc pro tunc* to the Petition Date, and the abandonment of the Personal Property in the manner set forth above, is a sound exercise of its business judgment, and necessary, prudent and

in the best interests of the Debtor, its estate and creditors.  Accordingly, entry of the Proposed Order is appropriate.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

25.    To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h) to the extent applicable.

## RESERVATION OF RIGHTS

26.    Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtor, a waiver of the Debtor's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtor expressly reserves its rights to contest any invoice or claim related to the relief requested herein in accordance with applicable law.

## NOTICE

27.    Notice of this Motion shall be provided to: (i) the U.S. Trustee; (ii) the parties included on the Debtor's list of thirty (30) largest unsecured creditors, as identified in its chapter 11 petition; (iii) the Debtor's prepetition secured lenders; (iv) the Debtor's postpetition secured lenders; (v) the Counterparties identified on Schedule 1 and Schedule 2 to the Proposed Order; and (vi) all parties that, as of the filing of this Motion, have requested notice in this chapter 11 case pursuant to Bankruptcy Rule 2002.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE the Debtor respectfully requests entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: November 3, 2015
        Wilmington, Delaware

COLE SCHOTZ P.C.

*/s/ Patrick J. Reilley*
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
David W. Giattino (No. 5614)
500 Delaware Avenue
Suite 1410
Wilmington, Delaware 19801

*Proposed Counsel to the Debtor*
*and Debtor in Possession*