## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| FRESH & EASY, LLC,[1] | : | Case No. 15-12220 (BLS) |
|  | : |  |
| Debtor. | : |  |
|  | : | **Hearing Date: November 24, 2015 at 1:00 p.m. (ET)** |
|  | : | **Objection Deadline: November 17, 2015 at 4:00 p.m. (ET)** |

**APPLICATION FOR AN ORDER AUTHORIZING (I) THE DEBTOR TO RETAIN
DJM REALTY SERVICES, LLC AND CBRE, INC. AS REAL ESTATE
CONSULTANTS AND ADVISORS *NUNC PRO TUNC* TO THE PETITION DATE
AND (II) A WAIVER OF CERTAIN REPORTING
REQUIREMENTS PURSUANT TO LOCAL RULE 2016-2(H)**

The above-captioned debtor and debtor-in-possession (the "Debtor") hereby submits this application (this "Application") for entry of an order, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (i) authorizing the joint employment and retention of DJM Realty Services, LLC ("DJM") and CBRE, Inc. ("CBRE" and together with DJM, the "Consultant") to serve as real estate consultants and advisors to the Debtor *nunc pro tunc* to the Petition Date (as defined below) and in accordance with the terms and conditions set forth in that certain services agreement dated as of November 4, 2015 (the "Services Agreement"),[2] a copy of which is attached hereto as

---

[1]     The last four digits of the Debtor's federal taxpayer identification number are 8906. The Debtor's mailing address is 20101 Hamilton Avenue, Suite 350, Torrance, CA 90502.

[2]     Any references to, or summaries of, the Services Agreement in this Application are qualified by the express

<u>Exhibit A</u>; (ii) approving the terms of the Consultant's employment, including the fee and expense structure and the indemnification, reimbursement and related provisions set forth in the Services Agreement; (iii) approving a waiver of certain reporting requirements pursuant to Local Rule 2016-2(h); and (iv) granting related relief.  In support of this Application, the Debtor intends to file and serve respective declarations from authorized representatives of both DJM and CBRE prior to the Hearing, and rely on the representations made therein (together, the "<u>Consultant Declarations</u>"). In further support of this Application, the Debtor incorporates the statements contained in the *Declaration of Amir Agam in Support of Chapter 11 Petition and First Day Motions* (the "<u>First Day Declaration</u>"),[3] and respectfully states as follows:

## JURISDICTION AND VENUE

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "<u>Amended Standing Order</u>"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014-1 and 2016-2, and Local Rule 2014-1 and 2016-2.

---

terms of the Services Agreement, which shall govern if there is any conflict between the Services Agreement and such summaries or references herein.    Additionally, any capitalized terms used in this Application and not otherwise defined herein shall have the meanings given to them in the Services Agreement.

3      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

## BACKGROUND

2.    On October 30, 2015 (the "Petition Date"), the Debtor commenced the above-captioned chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

3.    The Debtor has continued in possession of its properties and continues to operate its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.    No request has been made for the appointment of a trustee or examiner and no official committee has yet been established in this chapter 11 case.

5.    Additional information about the Debtor's business and the events leading up to the Petition Date can be found in the First Day Declaration, which is incorporated herein by reference.

## RELIEF REQUESTED

6.    By this Application, the Debtor requests entry of an order, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, (i) authorizing the employment and retention of the Consultant to serve as real estate consultant and advisor to the Debtor *nunc pro tunc* to the Petition Date in accordance with the terms and conditions set forth in the Services Agreement; (ii) approving the terms of the Consultant's employment, including the fee and expense structure and the indemnification, reimbursement and related provisions set forth in the Services Agreement; (iii) approving a waiver of certain reporting requirements pursuant to Local Rule 2016-2(h); and (iv) granting related relief.

54567/0001-

3

## RETENTION OF THE CONSULTANT

7.        The Debtor has determined, in consultation with its advisors and in an exercise of its sound business judgment, that the services provided by the Consultant will substantially enhance the Debtor's efforts to maximize the value of the sale of its real property portfolio, a list of which is attached as Exhibit A to the Services Agreement (each a "Property" and, collectively, the "Properties").    The Debtor has retained DJM and CBRE, jointly, to maximize their respective business contacts, marketing strengths, and extensive experience in the real estate and distressed asset industry.    DJM has significant experience representing and assisting debtors with the disposition of real estate and related assets in bankruptcy proceedings, and CBRE is a high-volume real estate industry leader that is very familiar with commercial lease activity in the Debtor's geographic area.    Moreover, CBRE worked effectively with the Debtor's senior management to market certain leasehold interests prior to the Petition Date pursuant to that certain *Amended and Restated Listing Agreement* dated January 19, 2015, by and between the Debtor and CBRE (such agreement, the "Prepetition CBRE Agreement").    In that capacity, CBRE gained valuable institutional knowledge regarding the Debtor's lease portfolio and value associated therewith, and successfully negotiated the disposition of four leasehold interests held by the Debtor.    The Debtor believes that, together, DJM and CBRE are uniquely well qualified to perform all of the services contemplated by the Services Agreement, and to represent the Debtor's interests in this chapter 11 case in a cost effective, efficient and timely manner.

8.        On the Petition Date, the Debtor filed a motion seeking authority to assume an agency agreement entered into by and between the Debtor and Hilco Merchants Resources, LLC ("Hilco") prior to the Petition Date in connection with the Debtor's ongoing Store Closing Sales.  Hilco is currently overseeing the Debtor's efforts to liquidate the furniture,

fixtures and equipment, as well as certain other inventory, located at the Debtor's retail locations, but such assets do not implicate the Properties or the Debtor's interest therein.   In addition, the Debtor has filed or will file a motion related to the liquidation of the assets located at the Debtor's distribution facility in Riverside, California.   These multi-track efforts do not overlap with the services for which the Debtor seeks to retain the Consultant.

9.    DJM and/or its affiliate(s) have advised numerous chapter 11 debtors in connection with similar issues related to various restructuring efforts, including in the following cases: In re RadioShack Corporation, Case No. 15-10197 (BLS) (Bankr. D. Del. Mar. 17, 2015); In re Fresh & Easy Neighborhood Market Inc., Case No. 13-12569 (KJC) (Bankr. D. Del. Oct. 25, 2013); In re Ultimate Acquisition Partners, LP, Case No. 11-10245 (MFW) (Bankr. D. Del. Apr. 8, 2011); In re Borders Group, Inc., Case No. 11-10614 (MG) (Bankr. D. Del. Mar. 16, 2011); In re Blockbuster Inc., Case No. 10-14997 (BRL) (Bankr. S.D.N.Y. Nov. 23, 2010); In re Movie Gallery, Inc., Case No. 10-30696 (DOT) (Bankr. E.D. Va. Feb. 3, 2010); In re TSIC, Inc. f/k/a Sharper Image Corp., Case No. 08-10322 (KG) (Bankr. D. Del. July 23, 2009); In re Goody's LLC, Case No. 09-10124 (Bankr. D. Del. Feb. 12, 2009); In re Circuit City Stores, Inc., Case No. 08-35653 (KRH) (Bankr. E.D. Va. Jan. 9, 2009); In re Linens Holding Co., Case No. 08-10832 (CSS) (Bankr. D. Del. July 24, 2008).   CBRE, on the other hand, has historically advised distressed leaseholders with respect to out-of-court transactions, and served the Debtor in a similar capacity prior to the Petition Date.

*Services to be Performed by the Consultant*

10.    The Debtor entered into the Services Agreement to obtain assistance from the Consultant to provide certain consulting and advisory services and to assist the Debtor with the disposition of the Properties.

11.    As set forth more fully in the Services Agreement, the Consultant will perform, without limitation, the following services for the Debtor (collectively, the "Services")[4]:

a) Meeting with the Company Representatives to ascertain the Company's goals, objectives and financial parameters;

b) Negotiating the termination, assignment, sale or other disposition of the Leases, as may be directed by the Company, including preparing and implementing a marketing plan therefor and assisting the Company at any auctions of any one or more Leases, if needed;

c) Negotiating waivers or reductions of prepetition cure amounts and Bankruptcy Code section 502(b)(6) claims, as may be directed by the Company with respect to Leases;

d) Reporting periodically to the Company regarding the status of negotiations;

e) Providing the Company with recommendations on an expedited timeframe relating to which Leases should be rejected and which should be retained to market for value, including an estimate of potential value.  Further advising the Company as to which locations the Company should retain the furniture and fixtures to preserve lease value; and

f) Providing such analysis or testimony as may be required to support obtaining Court approval of lease-related actions.

---

4    Capitalized terms used in describing the Services but not otherwise defined herein shall have the meanings ascribed to such terms in the Services Agreement.  In the event of any conflict between the terms of the summary of the Services Agreement contained herein and the Application, itself, the Services Agreement shall govern.

*Compensation and Expenses*

12.    In accordance with the terms of the Services Agreement, the Consultant

will be paid as follows (the "Fee Structure"):

a)  Consulting Fee: Subject to Court approval, the Debtor shall pay the
    Consultant the sum of $100,000 as a fully-earned, non-refundable
    consulting fee (the "Consulting Fee"). The Debtor may offset up to the
    full amount of the Consulting Fee against any other fees due to the
    Consultant pursuant to the Services Agreement;

b)  Lease Dispositions: For each transaction in which any Lease is sold,
    assigned or otherwise transferred to a third party (including lease
    termination transactions with landlords in which the landlord pays the
    Debtor for such termination, a so-called sale of "Designation Rights") that
    closes, the Consultant shall earn a fee equal to four percent (4.0%) of the
    Gross Proceeds of such transaction. The term "Gross Proceeds" means the
    total amount of consideration paid or payable to the Debtor or the Debtor's
    estate (including any cure amounts paid or waived, subject to the
    limitations in section (c) below) by the purchaser, assignee, designation
    rights purchaser, landlord or other transferee. In the event of a sale to a
    purchaser of substantially all the equity or assets of the Debtor, the
    Consultant's fee shall be based on the portion of the purchase price
    reasonably allocated to the value of the Leases as determined by the
    purchaser. Such Lease disposition fees shall be payable to the Consultant
    promptly following the closing of any applicable transaction;

c)  Reduction in Bankruptcy Claims: For any Lease assumed and assigned by
    the Debtor in this chapter 11 case, if the amount required to be paid to the
    landlord to cure defaults existing at the time of assumption is reduced
    below the cure amount that the Debtor reasonably acknowledges is owing,
    the Consultant will receive a fee for the waiver or reduction of the cure
    amount in an amount equal to four percent (4.0%) of the total amount of
    administrative claims so reduced or waived. For any Lease rejected by the
    Debtor or for reduced claim amounts which would have been unsecured
    claims, if the landlord agrees to reduce or waive the claim it could
    reasonably assert under section 502(b)(6) of the Bankruptcy Code or
    otherwise, the Consultant will receive a fee in an amount equal to four
    percent (4.0%) of the projected distributions that otherwise would have
    been payable to the landlord in this chapter 11 case on account of the
    waived portion of the unsecured claim (i.e. four percent (4.0%) of the
    reduction). Such claim reduction fees for assumed and assigned Leases
    shall be earned and payable on the date that the Court enters an order
    approving the assumption and assignment of the applicable Leases
    become final and non-appealable. Such claim reduction fees for rejected

Leases shall be earned and payable on the date that the Court enters an order approving the Debtor's plan of reorganization (or liquidation) or other termination of this chapter 11 case is final and non-appealable. The projected distributions will be reasonably estimated by the Debtor prior to the confirmation of the Debtor's plan of reorganization (or liquidation).

13.    In addition, under the Services Agreement, the Debtor has agreed to reimburse the Consultant for its reasonable, documented and incurred travel expenses, provided that the Debtor has pre-approved such travel expenses.

*Term*

14.    The term of the Services Agreement shall continue until the earlier of (i) eighteen (18) months from the execution thereof and (ii) the date all of the Leases are disposed of through rejection, assumption and assignment, sale or other disposition.

*Indemnification*

15.    The Debtor has agreed to indemnify DJM and CBRE and their respective affiliates and their respective officers, directors, employees, agents and independent contractors, and hold each of them harmless from and against all claims, demands, penalties, losses, liabilities or damages, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from, or related to the Consultant's services provided under the Services Agreement, unless such claims arise in whole or in part as a result of the Consultant's negligence or willful misconduct (collectively, the "Indemnification Provisions").[5]

*Exclusivity*

16.    The Services Agreement contains the following exclusivity language: "During the Term of this Agreement, the Consultant has the sole and exclusive authority to perform all services outlined herein for the Leases.  During the Term, all relevant inquiries

---

5    The summary of the Indemnification Provisions is qualified in its entirety by the Indemnification Provisions included in the Services Agreement, which shall govern subject to the terms of an order approving this Application.

54567/0001-

regarding the Leases made to the Company, its representatives or related parties to the Company shall be directed to the Consultant."

***Waiver of Requirements for Compensation Requests Pursuant to Local Rule 2016-2(h)***

17.    Pursuant to Local Rule 2016-2(h), the Debtor requests that the Court waive the reporting requirements set forth in Local Rule 2016-2(d) with respect to the Consultant.   The Consultant is being employed by the Debtor pursuant to sections 327(a) and 328(a) of the Bankruptcy Code to provide real estate consulting and advisory services.   As will be further explained in the forthcoming Consultant Declarations, it is standard practice in the Consultant's industry for professionals providing services relating to the sale of real property to be compensated on a flat fee percentage basis, rather than on an incremental hourly basis, for such services. CBRE and DJM have informed the Debtor that, consistent with industry practice, the Consultant intends to bill the Debtor on a flat fee percentage basis for the Services described above.

18.    The Debtor proposes that for all Services, and for all expenses incurred in connection with such Services, the Consultant be paid 100% of the amount due upon submission of an acceptable invoice to the Debtor.   Consistent with the Consultant's general practice, such invoice will not include the information required by Local Rule 2016-2(d), including, without limitation, activity descriptions, divided into general categories of time, detailed activity descriptions with time allotments, or billing in tenth of an hour increments.  In particular, given the nature of services it provides and its standard flat-fee payment structure, the Consultant does not typically maintain time records of its activities and it would be unduly burdensome and time-consuming for it to do so here. In light of the fee structure outlined above, in which flat fees are payable based upon a measurable benefit to the estate, the Debtor submits that modification of the requirements of Local Rule 2016-2(d) is warranted.   The Debtor further requests that the

Consultant not be required to submit interim fee applications or a final fee application for the Services described herein.

19.      Except as described herein, no commitments have been made or received by the Consultant, nor any member thereof, as to compensation or payment in connection with this chapter 11 case other than in accordance with the provisions of the Bankruptcy Code and orders of this Court.  The Consultant has not shared or agreed to share any of its compensation from the Debtor with any other person (other than as between DJM and CBRE pursuant to the Services Agreement), other than principals and employees of the both DJM and CBRE, as permitted by section 504 of the Bankruptcy Code.

## PAYMENTS PRIOR TO THE PETITION DATE

20.      During the 90 days prior to the commencement of this chapter 11 case, DJM did not receive any payments from the Debtor, and the Debtor did not owe DJM for any fees or expenses incurred prior to the Petition Date.  Detail regarding any payments to CBRE in the 90 days prior to the Petition Date, to the extent applicable, will be provided in the CBRE's Consultant Declaration.

## THE CONSULTANT'S DISINTERESTEDNESS

21.      The Debtor will review the Consultant Declarations once finalized and filed, and confirm that the Consultant is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code because the Consultant:  (i) has no connection with the Debtor, its creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; (ii) does not hold any interest adverse to the Debtor's estate; and (iii) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code.

54567/0001-

22.    DJM and CBRE will review their respective files periodically during the pendency of this chapter 11 case to ensure that no conflicts or other disqualifying circumstances exist or arise.    If any new relevant facts or relationships are discovered or arise in such review, DJM and CBRE, respectively, will use reasonable efforts to identify such further developments and will promptly file supplemental declarations, as required by Bankruptcy Rule 2014(a).

**REQUESTED RELIEF IS REASONABLE
AND IN DEBTOR'S BEST INTERESTS**

23.    The Debtor believes that the Fee Structure and Indemnification Provisions are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code.    The Fee Structure and the Indemnification Provisions are reasonable in light of, among other things, (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context, and (c) DJM and CBRE's substantial experience with respect to real estate consulting and advisory services.    The Fee Structure and the Indemnification Provisions appropriately reflect the nature and scope of services to be performed by the Consultant in this chapter 11 case and the fee structures and indemnification provisions typically utilized by both DJM and CBRE.

24.    The terms and conditions of the Services Agreement were negotiated by the Debtors and the Consultant at arm's length and in good faith.    The Debtor respectfully submits that the indemnification, reimbursement and other provisions contained in the Services Agreement, viewed in conjunction with the other terms of the Consultant's proposed retention, and as modified in the proposed order attached hereto as Exhibit B, are reasonable and in the best interests of the Debtor, its estate and creditors in light of the fact that the Debtor requires the Consultant's services to maximize the value of the Debtor's estate for all parties in interest. Further, the Consultant is well qualified to perform all services contemplated by the Service

54567/0001-

11

Agreement, and to represent the Debtor's interests in this chapter 11 case, in a cost-effective, efficient and timely manner.    Accordingly, as part of this Application, the Debtor respectfully requests that the Court approve the terms of the Services Agreement.

## EFFORTS TO AVOID DUPLICATION OF SERVICES

25.    The Debtor and the Consultant intend that all of the services that the Consultant will provide to the Debtor will be appropriately directed by the Debtor so as to avoid duplication of efforts among other professionals retained in this chapter 11 case, including Hilco, and performed in accordance with applicable standards of the profession.   The Consultant will work collaboratively with the Debtor's senior management, board of directors and other professionals to avoid duplication of service among professionals.   The Debtor believes that the services to be provided by the Consultant will complement and will not be duplicative of any services of the Debtor's other professionals, including any services provided by Hilco, the entity conducting the ongoing Store Closing Sales described above.    The Consultant will not be providing any services related to the Store Closing Sales and Hilco will not be providing any services related to the disposition of the Leases described herein.

## BASIS FOR RELIEF REQUESTED

26.    Section 327(a) of the Bankruptcy Code empowers the debtor, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."   11 U.S.C. § 327(a).    Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

     a.   is not a creditor, an equity security holder, or an insider;

     b.   is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

        c.  does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

27.     Section 328(a) of the Bankruptcy Code permits the Court to approve the terms of the Consultant's engagement as set forth in the Services Agreement, including the Fee Structure and the Indemnification Provisions. Section 328 of the Bankruptcy Code permits the compensation of professionals on flexible terms that reflect the nature of their services and market conditions. Owing to this inherent uncertainty, courts have approved arrangements similar to the Fee Structure and the Indemnification Provisions under section 328 of the Bankruptcy Code where such arrangements contain "reasonable" terms and conditions.

28.     The Fee Structure appropriately reflects the nature and scope of services to be provided by the Consultant and the Consultant's substantial experience with respect to real estate consulting and advisory services, and is consistent with the fee structures typically utilized by DJM and CBRE and other leading real estate consultants who do not bill their clients on an hourly basis.

29.     Furthermore, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, a relevant revision was made to section 328(a) of the Bankruptcy Code, which is highlighted in bold below:

> The trustee, or a committee appointed under Section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, **on a fixed or percentage fee basis**, or on a contingent fee basis.

The Debtor submits that this revision removes any doubt regarding the Debtor's ability to retain the Consultant, with Court approval, on a fixed or percentage fee basis, such as the Fee Structure described above.

30.     The Services Agreement appropriately reflects:  (i) the nature and scope of services to be provided by the Consultant; (ii) the Consultant's substantial experience with respect to real estate consulting and advisory services; and (iii) the fee structures typically utilized by DJM, CBRE and other leading real estate consultants in the industry.

## NOTICE

31.    Notice of this Application shall be provided via overnight delivery to: (i) the U.S. Trustee; (ii) the parties included on the Debtor's list of thirty (30) largest unsecured creditors, as identified in its chapter 11 petition; (iii) the Debtor's prepetition secured lenders; (iv) the Debtor's postpetition secured lenders; and (v) all parties entitled to notice pursuant to Bankruptcy Rule 2002.  Due to the nature of the relief requested herein, the Debtor respectfully submits that no further notice of this Application is necessary.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an order in substantially the form attached hereto as Exhibit B, (i) granting the relief sought herein; and (ii) granting to the Debtor such other and further relief as the Court may deem proper.

Dated:  November 5, 2015
      Wilmington, Delaware

                              */s/ Amir Agam*
                              Amir Agam
                              Chief Restructuring Officer