# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FRESH & EASY, LLC, | ) Case No. 15-12220 (BLS) |
| | ) |
| Debtor. | ) |
| | ) Related to Docket Nos. 124 and 230 |

## DECLARATION OF HIDEJIRO MATSU
## IN SUPPORT OF SALE OF ASSETS TO JPN MART, INC. D/B/A SEWIA MARKET

I, Hidejiro Matsu, declare and state as follows:

1. I am the President of JPN Mart, Inc. d/b/a Sewia Market ("JPN"). I provide this declaration (the "Declaration") based upon my personal knowledge and information, my review of relevant documents, or my opinion based upon my personal experience and knowledge and review of the relevant documents and pleadings, except for the statements made herein "on information and belief." I am competent to testify to the facts set forth herein.

2. This Declaration is being submitted in connection with the proposed sale of one real property lease and related assets by Fresh & Easy, LLC, the above-captioned debtor (the "Debtor"), for which the Debtor is seeking Court approval pursuant to *Debtor's Motion for Entry of (1) Order (A) (1) Establishing Bidding Procedures for Certain Unexpired Leases of Nonresidential Real Property, (2) Authorizing and Scheduling Auction with Respect Thereto, etc.* [Docket No. 124] (the "Sale Motion") [Docket No. 124], the Bidding Procedures annexed as part of Exhibit A thereto, and the *Order (A)( 1) Establishing Bidding Procedures for Certain Unexpired Leases of Nonresidential Real Property, (2) Authorizing and Scheduling Auction with Respect Thereto, (3) Approving Cure Procedures, and (4) Scheduling Hearing with Respect to*

*Outcome of the Auction; (B) Establishing Procedures for the Rejection of Certain Unexpired Leases of Nonresidential Real Property; and (C) Granting Certain Related Relief and (II) Order (A) Approving Assumption and Assignment of Leases and (B) Waiving Stay Provisions Pursuant to Bankruptcy Rule 6006(d)* [Docket No. 230] (the "Procedures Order"). Pursuant to the bidding procedures approved by the Procedures Order (the "Bidding Procedures"), bids were due by November 25, 2015.

3.  In response to the solicitation and marketing process initiated by the Debtor, as described more fully in the Sale Motion, JPN submitted a timely offer to acquire the Debtor's interest in the ground lease (the "Lease") for Store No. 1342 located at 3151 Harbor Blvd., Costa Mesa, California (the "Location") and related alcoholic beverage license and furniture, fixtures and equipment at that location (collectively, the "Assets") for the total purchase price of $400,000.00 in cash. In connection therewith, JPN submitted a proposed Assumption and Assignment Agreement and other bid documents to Debtor on November 24, 2015 as well as a deposit in the amount of $40,000.00.

4.  On December 1, 2015, at the auction of certain of Debtor's leases and related assets in Los Angeles, California, which I personally attended, JPN was announced as the winning bidder for the Assets. On December 2, 2015, Debtor filed its *Notice of Bids Accepted in Connection With Disposition of Debtor's Leases* [Docket No. 278], identifying the Assets, for which JPN was the successful bidder.[1]

---

[1] Since that time, JPN and the Debtor have resolved their differences with respect to the Assumption and Assignment Agreement. Specifically, among other things, JPN has agreed to waive all contingencies and conditions to closing on the purchase of the Assets other than entry of an Order of the Bankruptcy Court approving the transaction.

**Good Faith**

5. I am responsible for the actions of JPN and its agents with respect to the JPN bid for the Assets, and I am familiar with the actions of JPN generally with respect to the JPN bid for the Assets. At no time did JPN or any of its agents engage in any collusive behavior with respect to the JPN bid for the Assets. Neither JPN nor any of its agents had any contact with any other prospective bidder for the Assets regarding the auction of the Assets. JPN does not have any understanding with any other person or entity that is intended to affect the price paid by JPN for the Assets. All actions taken by JPN and its agents with respect to its bid for the Assets were taken in good faith, and the negotiations between JPN and the Debtor have been conducted at arms-length and in good faith, with the parties being represented by separate legal counsel.

6. JPN has not exerted control or undue influence over the Debtor in connection with the sale of the Assets. JPN does not, and will not, share any common incorporators, officers, directors or stockholders with the Debtor, and JPN is not an insider of the Debtor. Accordingly, it is my understanding that JPN has acted in good faith and is entitled to the protections afforded to good faith purchasers under section 363(m) of the Bankruptcy Code.

**Adequate Assurance of Future Performance**

7. In accordance with the Bidding Procedures, JPN provided to the Debtor information regarding the adequate assurance of future performance by JPN with respect to JPN's bid for the Assets which, as I understand it, was then disseminated by the Debtor to Harbor Mesa LLC, the landlord of Location (the "Landlord") on a confidential basis in accordance with the Bidding Procedures.

8. The Landlord filed an objection to the proposed assignment of the Lease to JPN. The initial hearing on the proposed assignment was adjourned to allow the parties to resolve that objection. During that time, JPN had numerous discussions, meetings and email exchanges

during which time additional financial information and disclosures regarding JPN and myself (collectively, the "Adequate Assurance Information") were provided to the Landlord.

9. I am informed that there are certain requirements under the Bankruptcy Code relating to adequate assurance of future performance under leases of real property in a shopping center. As the assignee of the Lease, JPN is willing and able to perform its obligations under the Lease that arise on and after the closing on the assumption and assignment of the Lease to JPN.

10. Specifically, but not without limitation, JPN will be adequately capitalized by me from the outset,[2] has an experienced management team, and a reasonable and realistic go forward business plan (all of which was shared with the Landlord). In addition, JPN is willing to provide:

- a $120,000 letter of credit issued by a major California bank;
- an additional $80,000 in cash security deposit;
- my personal guaranty in the amount of one year of rent that would continue until JPN demonstrates 3 consecutive quarters of profit in any fiscal year plus the establishment of $2.5 million in aggregate capitalization of JPN; and
- a key man life insurance policy on myself for $1 million that would continue for the term of the guaranty (the premium of which is in excess of $30,000 per year).

11. To support the proposed guarantee, in addition to having provided my personal bank statements to the Landlord which show my substantial liquidity, at my direction, a personal financial statement has been prepared for me by my accountants and will be provided to the Landlord prior to the hearing before the Court. I am willing to share that personal financial statement with the Court *in camera*.

---

[2] JPN intends to make approximately $300,000 in tenant improvements, spend approximately $200,000 for computers, cash registers and related equipment and fixtures and expend approximately $350,000 - $400,000 on inventory purchases. In addition, on an as needed basis, I will fund operations either from a bank line of credit or my own personal funds.

12. I have over forty years' experience owning and operating grocery stores. My brother and I founded Marukai Corporation USA in 1965. In 1975 Marukai Corporation opened a supermarket in Gardena, California and in 1980 formed Marukai Wholesale Mart. Marukai was a membership based Japanese and Asian grocer and non-food retailer. Marukai sales volumes grew to over $120 million per year with 750 employees and 9 stores in California and 2 in Hawaii. At all times during my ownership of Maukai, Marukai paid its obligations as they came due, including its landlords.

13. In 2013 Marukai's stock was sold to Don Quijote. After my non-compete agreement with Don Quijote expired in September 2015, I decided to start JPN under the trade name Seiwa Market. I will use my extensive experience in the retail grocery industry, as well as the customer base and advantageous buying systems I have developed over my forty years in the business, to operate Seiwa Market at the subject location.

### No Successor Liability

14. It is my understanding that JPN is acquiring the Assets free and clear of any liens, claims, encumbrances and interests, as set forth in the Bidding Procedures and the proposed sale order. JPN would not be acquiring the Assets if they could not be acquired free and clear of any liens, claims, encumbrances and interests. JPN would not have agreed to the proposed sale transaction if JPN could be held liable for claims against the Debtor under any theory of successor liability, de facto merger, substantial continuity or similar theories.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

DATED this 16th day of December, 2015.

_____
Hidejiro Matsu

PHIL1 5104494v.4