## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| | : Chapter 11 |
| In re: | : |
| | : Case No. 15-12220 (BLS) |
| FRESH & EASY, LLC,[1] | : |
| | : **Hearing Date: March 17, 2016 at 11:00 a.m. (ET)** |
| Debtor. | : **Objection Deadline: March 10, 2016 at 4:00 p.m. (ET)** |
| | : **Local Rule 2016-2(d) Waiver Requested** |

**DEBTOR'S MOTION FOR AN ORDER, PURSUANT TO
SECTIONS 105, 327, 328, 330, 363, AND 554 OF THE BANKRUPTCY CODE, (I)
AUTHORIZING THE DISPOSITION OF CERTAIN EQUIPMENT PURSUANT TO
THE ASSET DISPOSITION SERVICES AGREEMENT; (II) APPROVING THE
TERMS OF THE ASSET DISPOSITION SERVICES AGREEMENT; (III)
WAIVING ONE OR MORE OF THE INFORMATION REQUIREMENTS
OF LOCAL RULE 2016-2 AND (IV) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor-in-possession (the "Debtor") hereby

submits this motion (this "Motion") for entry of an order, pursuant to sections 105(a), 327, 328,

330, 363, and 554 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002,

2014, 6004, 6005 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), (i) authorizing the disposition of the Debtor's retired, used, end-of-life, and surplus IT

and communications equipment (collectively, the "Equipment") located at located at Itek

Services, Inc. 25501 Arctic Ocean Dr. Lake Forest, CA 92630, pursuant to the terms of that

certain Asset Disposition Services Agreement (the "Agreement") attached to the proposed order

attached hereto as Exhibit A (the "Proposed Order"); (ii) approving the terms of the Agreement;

(iii) waiving the information requirements of Local Rule 2016-2, to the extent such requirements

are applicable; and (iv) granting related relief.  In further support of this Motion, the Debtor

respectfully represents as follows:

---

[1] The last four digits of the Debtor's federal taxpayer identification number are 8906.  The Debtor's mailing address is 20101 Hamilton Avenue, Suite 350, Torrance, CA 90502.

54567/0001-

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are some or all of sections 105(a), 327, 328, 363, and 554(a) of the Bankruptcy Code, Bankruptcy Rules 2002, 2014, 6004, 6005 and 9014, and Local Rule 2014-1.

## GENERAL BACKGROUND

*A.     Introduction*

3.      On October 30, 2015 (the "Petition Date"), the Debtor commenced the above-captioned chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtor has continued in possession of its properties and continues to operate and maintain its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On November 10, 2015, the United States Trustee for Region 3 (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner in this chapter 11 case.

6.      Additional information about the Debtor's business and the events leading up to the Petition Date can be found in the *Declaration of Amir Agam in Support of Chapter 11*

*Petition and First Day Motions* [Docket No. 10] (the "First Day Declaration"), which is incorporated herein by reference.

    7. As further detailed in the First Day Declaration, the Debtor commenced this proceeding because it concluded that it is unable to reorganize on a standalone basis. Accordingly, the Debtor determined that the best way to maximize value for the benefit of all interested parties was a prompt and orderly wind-down of its business. As more fully discussed in the First Day Declaration, the conclusion to liquidate was reached following a lengthy process in which the Debtor considered and explored reasonable strategic alternatives.

*B. The Equipment*

    8. As set forth in more detail in the First Day Declaration, prior to the Petition Date, the Debtor sought to mitigate operational losses and terminated its retail activity at a number of locations, closing 70 stores in the months leading up to the Petition Date. The Debtor's IT and communications equipment located at the Debtor's closed stores (i.e., the Equipment) was transported to Itek Services Inc. ("Itek"), which provided the Debtor with IT maintenance services prepetition. As of the date hereof, the Equipment remains at Itek's facility.

*C. The Agreement*

    9. Under the terms of the Agreement, subject to the Court's approval, HiTech Assets, Inc. ("HiTech") will serve as the exclusive agent to the Debtor for the purpose of cleansing, refurbishing and reselling, or scrapping, as appropriate, the Equipment as outlined in the Agreement. The Debtor seeks approval of the Agreement so that it may leverage the experience and resources of HiTech in processing and liquidating used and surplus IT and communications equipment, to the benefit of all stakeholders in these cases. The Debtor solicited offers from several providers of asset disposition services to purchase the Equipment or consign the Equipment, before ultimately concluding that the terms offered by HiTech were most

advantageous to the estate.  HiTech will separately file a declaration disclosing any connections

to the Debtor, its creditors, and other parties in interest in this case (the "HiTech Declaration")

within seven days of the date hereof.

    10. Following good faith, arms'-length negotiations, the Debtor and HiTech

entered into the Agreement, substantially in the form annexed to the Proposed Order.  A

summary of the terms of the Agreement is listed herein:[2]

- HiTech will prepare the Equipment for reuse by cleaning of data-bearing devices so that data is unrecoverable in accord with specification NIST 800-88 or equivalent (i.e., DoD-level data eradication) and selling such Equipment on the secondary market, and/or scrapping Equipment that is unmarketable due to age or damage.  The Services to be provided by HiTech may also include:

  - Picking up packed/palletized Equipment from Itek, at the direction of the Debtor's representative;

  - Arranging the freight and packing services and materials if needed;

  - Warehousing and inventorying the Equipment received into HiTech's warehouse;

  - Processing the Equipment, which includes wiping hard disks and removing the Debtor's identifiers (e.g., asset tags, stickers);

  - Providing a serialized audit report of the Equipment indicating the condition and specifications along with purchase order for the Equipment;

  - Shipping end-of-life Equipment to a vetted downstream recycler for proper deconstruction, component recycling, and material recovery.

- The Debtor will receive 50% of gross sales generated by assets resold by HiTech, and HiTech will retain 50% of sales.  HiTech will use its expertise and commercially reasonable options available to maximize the purchase price paid to the Debtor for all Equipment that can be resold and to minimize the costs associated with processing for reuse or recycling of the Equipment.

Pursuant to Local Rule 6004-1, the following provisions of the Agreement are to be highlighted:

---

[2] The summary of the Agreement is qualified in its entirety by the Agreement.  If there are any inconsistencies between the summary contained herein and the Agreement, the Agreement shall control.  Capitalized terms used but not defined in the following summary of the Agreement shall have the definitions ascribed to them in the Agreement.

- Private Sale:  The Debtor intends to dispose of the Equipment through a private transaction rather than conducting a public sale or auction process.  Hitech does not intend to conduct a public auction for the Equipment, but reserves the right to do so.

- Relief from Bankruptcy Rule 6004(h):  The Debtor requests that the Court waive the 14-day stay period under Bankruptcy Rule 6004(h).

11.    For the reasons explained below and throughout this Motion, the Debtor's decision to proceed with the disposition of the Equipment pursuant to the Agreement is a sound exercise of the Debtor's business judgment.  The Debtor believes the Equipment is worth less than $50,000 and represents *de minimis* value to the estate.  Despite soliciting offers from several other potential purchasers and asset disposition services providers, the Debtor has been unable to obtain more favorable terms than those provided under the Agreement.  Proceeding by private disposition and without conducting a formal auction significantly reduces the transaction costs associated with the proposed disposition, which likely represents minimal value to the estate.  Moreover, the Debtor believes that the market for the Equipment is limited.  The Agreement, presents the highest, best, and, indeed, only viable offer for the Equipment, and thus, the Debtor submits that disposing of the Equipment pursuant to the Agreement maximizes the value realized by the Debtor's estate for the benefit of all stakeholders.

**RELIEF REQUESTED**

12.    By this Motion, the Debtor seeks entry of an order, pursuant to sections 105(a), 363(b), and 554(a) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9014, (i) authorizing the disposition of the Equipment pursuant to the Agreement; (ii) approving the terms of the Agreement; and (iii) granting related relief.  To the extent that HiTech is a "professional" requiring retention, the Debtor also seeks, pursuant to sections 327, 328 and 330 of the Bankruptcy Code, Bankruptcy Rules 2014, 6004 and 6005, and Local Rule 2014-1, such retention and a waiver of the information requirements of Local Rule 2016-2.

## BASIS FOR RELIEF

### A.  The Debtor Has Satisfied Section 363(b) of the Bankruptcy Code.

13.    Section 363(b)(1) of the Bankruptcy Code provides:  "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code provides: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  In pertinent part, Bankruptcy Rule 6004 states that, "all sales not in the ordinary course of business may be by private sale or by public auction."  Fed. R. Bankr. P. 6004(f)(1).  With respect to the notice required in connection with a private sale, Bankruptcy Rule 2002(c)(1) states, in pertinent part, that,

> . . . the notice of a proposed use, sale or lease of property . . . shall include . . . the terms and conditions of any private sale and the deadline for filing objections. The notice of a proposed use, sale or lease of property, including real estate, is sufficient if it generally describes the property.

Fed. R. Bankr. P. 2002(c)(1).

14.    To approve the use, sale, or lease of property outside the ordinary course of business, this Court must find "some articulated business justification" for the proposed action.  See In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the "articulated business justification" and good faith tests of Committee of Equity Sec.  Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983)); see also In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991) (concluding that the Third Circuit had adopted a "sound business purpose" test in Abbotts Dairies); Titusville Country Club v. PennBank (In re Titusville Country Club), 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc., 77 B.R. 15, 19 (Bankr. E.D. Pa. 1987).

**B.  Entry into the Agreement Is Within the Sound Business Judgment of the Debtor, and the Transactions Provided Therein Should Be Approved.**

15.     Generally, courts have applied four (4) factors in determining whether a disposition of a debtor's assets should be approved:  (a) whether a sound business reason exists for the proposed transaction; (b) whether fair and reasonable consideration is provided; (c) whether the transaction has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice is provided.  See Lionel, 722 F.2d at 1071 (setting forth the "sound business purpose" test); Abbotts Dairies, 788 F.2d at 145-57 (implicitly adopting the articulated business justification test and adding the "good faith" requirement); Delaware & Hudson Ry., 124 B.R. at 176 ("Once a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith.").

16.     This fundamental analysis does not change if the proposed disposition is private, rather than public.  See, e.g., In re Ancor Exploration Co., 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983) ("[T]he bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b).").  The bankruptcy court "has ample discretion to administer the estate, including authority to conduct public or private sales of estate property."  In re WPRV-TV, Inc., 143 B.R. 315, 319 (D.P.R. 1991), vacated on other grounds, 165 B.R. 1 (D.P.R. 1992); accord, In re Canyon Partnership, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985).  Here, the sale of the Acquired Assets to RFFM, pursuant to terms of the Purchase Agreement, meets these requirements and should be approved.

i.      Proceeding by a Private Disposition Reflects an Exercise of the Debtor's
        Business Judgment

17.     There is more than ample business justification to dispose of the

Equipment through a private transaction rather than conducting a public sale or auction process.

The Debtor submits that an order granting the relief requested herein is a matter within the

discretion of the Court and would be consistent with the provisions of the Bankruptcy Code.  See

11 U.S.C. § 105(a).  The Debtor's advisors have not identified any other third-party purchasers

interested in buying the Equipment or consigning the Equipment, particularly given the cost of

refurbishing or scrapping the Equipment.  Given the dearth of alternatives and advantageous

terms offered by HiTech, the Debtor believes that proceeding as proposed is in the best interest

of its estate and creditors.

18.     The surrounding circumstances thus underscore that the added costs

associated with a public auction or extended bid process are both unjustified and unlikely to

generate additional value.  Simply put, the Debtor believes it has identified the only potential

way to derive value for the Equipment under these facts, and it is in the Debtor's best interest to

pursue this opportunity.

ii.     The Terms of the Agreement Are Fair and Reasonable

19.     The Debtor has analyzed HiTech's offer and concluded that the

contemplated transaction will maximize the value of the Debtor's estate.  In light of the nature of

the Equipment and the totality of the circumstances, the Debtor believes that the proposed

disposition provides fair and reasonable value for the Equipment.  If HiTech was not willing to

refurbish and resell, or scrap, the Equipment, the Debtor would likely be forced to abandon the

Equipment without any benefit to the estate, and possibly be faced with an administrative claim

from Itek for removal of the Equipment.  Accordingly, the Debtor submits that the proposed

Agreement is in the best interest of the estate and represents a fair, reasonable, and, indeed, advantageous disposition of the Equipment.  Nevertheless, the Debtor will consider any higher and better offers provided to it prior to <u>March 10, 2016 at 4:00 p.m.</u>, and files this Motion subject to any such higher and better offers.

iii.    <u>The Transaction Is Proposed in Good Faith</u>

20.    The disposition of the Equipment has been proposed in good faith as the Agreement was the product of good-faith, arms'-length negotiations between the Debtor and HiTech, and was negotiated with the active involvement of the Debtor's management and professional advisors, including its chief restructuring officer.  The Debtor believes that the disposition of the Equipment by HiTech pursuant to the terms and conditions of the Agreement is not the product of collusion or bad faith.  No evidence exists to suggest that the Agreement is anything but the product of arms'-length negotiations between the Debtor and HiTech.

iv.    <u>Adequate and Reasonable Notice of the Transfer Will Be Provided</u>

21.    The Debtor will provide adequate notice of the Motion to parties in interest, as required by the applicable procedural rules.  <u>See</u> Fed. R. Bankr. P. 2002(c)(1) (notice must contain "the terms and conditions of any private sale and the time fixed for filing objections."); <u>see also</u> <u>Delaware & Hudson Ry.</u>, 124 B.R. at 180 (the disclosures necessary in such a sale notice need only include the terms of the sale and the reasons why such a sale is in the best interests of the estate and do not need to include the functional equivalent of a disclosure statement).

22.    To summarize, in the Debtor's informed business judgment, there is very little, if anything, to be gained by conducting a formal auction process for the Equipment because the delay, uncertainty, and added administrative expenses attendant to the auction

process would be unfavorable to the Debtor, its estate, and creditors.  Accordingly, the Debtor

submits that it should not be required to conduct a public sale or to establish bidding procedures

for the Equipment, but instead should approve the private disposition of the Equipment through

HiTech.

**C.  The Disposition Is Proposed in Good Faith Within the Meaning of 11 U.S.C. §363(m).**

23.    Here, the Agreement is being proposed by the Debtor in good faith.  There

is no evidence of fraud or collusion.  To the contrary, as discussed throughout this Motion, the

Agreement is the culmination of a solicitation and negotiation process.  All negotiations have

been conducted on an arms'-length, good-faith basis.  Under the circumstances, HiTech's

ultimate purchasers should be afforded the protections that section 363(m) of the Bankruptcy

Code provides to a good-faith purchaser.  See generally Marin v. Coated Sales, Inc. (In re Coated

Sales, Inc.), No. 89 Civ. 3704 (KMW), 1990 WL 212899 (S.D.N.Y.) (holding that to show lack

of good faith, a party must demonstrate "fraud, collusion, or an attempt to take grossly unfair

advantage of other bidders"); see also generally In re Sasson Jeans, Inc., 90 B.R. 608, 610

(S.D.N.Y. 1988) (quoting In re Bel Air Assocs., Ltd., 706 F.2d 301, 305 (10th Cir. 1983)); In re

Pisces Leasing Corp., 66 B.R. 671, 673 (E.D.N.Y. 1986) (examining the facts of each case,

concentrating on the "integrity of [an actor's] conduct during the sale proceedings" (quoting In re

Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978))).

**D.  The Disposition Should Be Free and Clear of Liens, Claims, and Interests (Except as Set Forth Herein).**

24.    In accordance with section 363(f) of the Bankruptcy Code, a debtor in

possession may sell property under section 363(b) "free and clear of any interest in such property

of an entity other than the estate" if any one of the following conditions is satisfied:  (i) such a

sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim,

or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property

is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of

a *bona fide* dispute; or (v) the party asserting the lien, claim, or interest could be compelled, in a

legal or equitable proceeding, to accept a money satisfaction for such interest.  11 U.S.C.

§ 363(f); see In re Elliot, 94 B.R. 343, 354 (E.D. Pa. 1988) (sale "free and clear" may be

approved provided the requirements of at least one subsection are met).

       25.     Considering that any objections to this Motion must be resolved by

consent of the objecting party or by the Court, the Debtor expects that it can satisfy at least the

second and fifth subsections of section 363(f) of the Bankruptcy Code.  Furthermore, courts have

held that they have the equitable power to authorize sales free and clear of interests that are not

specifically covered by section 363(f).  See, e.g., In re Trans World Airlines, Inc., 2001 WL

1820325, at *3, 6 (Bankr. D. Del. Mar. 27, 2001); Volvo White Truck Corp. v. Chambersburg

Beverage, Inc. (In re White Motor Credit Corp.), 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).

Accordingly, the Debtor requests that the transactions contemplated by the Agreement be

approved "free and clear."

**E.  The Abandonment of Certain Equipment Is Justified.**

       26.     Section 554(a) of the Bankruptcy Code provides that after notice and a

hearing, a debtor in possession "may abandon any property of the estate that is burdensome to the

estate or that is of inconsequential value and benefit to the estate."  See Hanover Ins. Co. v. Tyco

Indus., Inc., 500 F.2d 654, 657 (3d Cir. 1974) (stating that a debtor "may abandon his claim to any

asset, including a cause of action, he deems less valuable than the cost of asserting that claim"); In re

Grossinger's Assocs., 184 B.R. 429, 432 (Bankr. S.D.N.Y. 1995); see also Midlantic Nat'l Bank v.

N.J. Dep't of Envtl. Protection, 474 U.S. 494, 507, n.9 (1986) ("[A] trustee [in bankruptcy] may not

abandon property in contravention of a state statute or regulation that is reasonably designed to

protect the public health or safety from identified hazards . . . .  This exception to the abandonment power . . . is a narrow one."); In re Bryson, 53 B.R. 3, 4-5 (Bankr. M.D. Tenn. 1985) ("The effect of the abandonment is to remove the asset from the jurisdiction of the bankruptcy court.").

27.      Certain of the Equipment may not be salable at all due to age, damage or obsolescence, in which case it may be costly and burdensome to the Debtor's estate to retain such Equipment.  Thus, to the extent that HiTech does not sell certain Equipment, the Debtor requests that it be authorized, but not directed, to abandon the same without incurring liability to any person or entity, thereby minimizing the costs to the estate.  Pursuant to the Agreement, HiTech will ship such end-of-life Equipment to a vetted downstream recycler for proper deconstruction, component recycling, and material recovery.  Scrap recycling of non-reusable equipment, when needed, will be done in a legal and environmentally responsible manner that meets or exceeds all applicable regulatory rules and statutes.  HiTech maintains a zero percent landfill policy for all electronic equipment.  All scrap will be handled by a scrap processor meeting the downstream due diligence requirements of HiTech, the R2 responsible recycling standard, and applicable regulatory requirements.

28.      In addition, the Debtor and HiTech will utilize all commercially reasonable efforts to remove or cause to be removed any confidential or personal identifying information (which means information which alone or in conjunction with other information identifies an individual, including, but not limited to, an individual's name, social security number, date of birth, government-issued identification number, account number, and credit or debit card number) in any of the Debtor's hardware, software, computers, cash registers, or similar equipment that are to be sold or abandoned.

29.     Accordingly, the Debtor requests that it be authorized, but not directed, to abandon any unsalable Equipment so that HiTech may scrap such Equipment as set forth in the Agreement.

**F.  Retention and Local Rule 2016-2 Waiver**

30.     To the extent that HiTech is a "professional" requiring retention to effectuate the terms of the Agreement, the Debtor seeks such retention and a waiver of the information requirements of Local Rule 2016-2.  Section 327 of the Bankruptcy Code provides that a trustee (or debtor or debtor in possession, by virtue of sections 1101(1) and 1107(a)), subject to court approval—

> may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

31.     Section 328 of the Bankruptcy Code, meanwhile, provides that a Debtor, subject to Court approval—

> may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

11 U.S.C. § 328(a).

32.     Section 328(a) of the Bankruptcy Code allows this Court to approve the employment of professionals retained pursuant to section 327 of the Bankruptcy Code on any reasonable terms and conditions.  *See* 11 U.S.C. § 328(a).  Given the limited scope and duration of HiTech's work and the nature of its compensation structure, the Debtor believes that a waiver of the detailed filing requirements of Bankruptcy Rule 2016 and the informational requirements

of Local Rule 2016-2 is warranted and appropriate.  The Debtor also requests that HiTech be relieved of the requirements of any order entered by this Court approving interim compensation procedures for retained professionals.  In light of HiTech's payment structure, the procedures detailed in any such order will burden—without providing any benefit to—the Debtor's estate.  If the Debtor and HiTech are required to prepare, file and serve monthly and quarterly fee statements, substantial administrative costs and professional time may be incurred, without any benefit provided to the estate because HiTech's fee is not paid by the Debtor.  Therefore, the Debtor requests that HiTech be relieved of the requirement to file monthly or quarterly interim fee applications.  Instead, the Debtor proposes that HiTech be required to file a final report with the Court that identifies only each Asset sold pursuant to the terms set forth in the Auction Agreement, the applicable purchaser, the price paid for each Asset, and the proceeds retained by HiTech with respect to each sale.  HiTech shall not be required to keep time records of hours spent performing its services.

### G.  Waiver of 14-Day Waiting Period Under Bankruptcy Rule 6004(h) Is Appropriate.

33.     Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  See Collier on Bankruptcy ¶ 6004.11 (Alan N. Resnick & Hemy J. Sommer eds., 16th ed.) (citing Advisory Committee on the Federal Rules of Bankruptcy Procedure, Committee Notes on Rules - 1999 Amendment at subdivision (g) (1999)).  Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day period, the leading treatise on bankruptcy suggests that the stay period should be eliminated to allow a sale or other transaction to close

immediately "where there has been no objection to the procedure." Id.  The treatise further provides that if an objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek such a stay.  See id.

34.     The Debtor submits that under the circumstances, ample cause exists to justify the waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).  Any delay in the Debtor's ability to sell the Equipment would be detrimental to the Debtor and its estate and creditors.  Accordingly, the Debtor requests that the Court waive the 14-day stay period under Bankruptcy Rule 6004(h).

## **NOTICE**

35.     Notice of this Motion has been provided to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) the Debtor's prepetition secured lenders; (iv) the Debtor's postpetition secured lenders; (v) Itek; and (vi) all parties entitled to notice pursuant to Bankruptcy Rule 2002.  The Debtor respectfully submits that, in light of the nature of the relief requested, no other notice need be given.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests entry of the Proposed Order, substantially in the form attached hereto as Exhibit A, (i) authorizing the disposition of the Equipment pursuant to the Agreement; (ii) approving the terms of the Agreement; (iii) waiving the information requirements of Local Rule 2016-2, to the extent such requirements are applicable; and (iv) granting such other and further relief as the Court deems just and proper.

Dated: February 25, 2016          COLE SCHOTZ P.C.
Wilmington, Delaware

     */s/ David W. Giattino*
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
David W. Giattino (No. 5614)
500 Delaware Avenue
Suite 1410
Wilmington, Delaware 19801

*Counsel to the Debtor*
*and Debtor in Possession*