## EXHIBIT B

**Liquidating Trust Agreement**

**<u>DRAFT</u>**

**LIQUIDATING TRUST AGREEMENT**

**AND**

**DECLARATION OF TRUST**

**By and Among**

**FRESH AND EASY, LLC,**

**Debtor**

**and**

**Peter S. Kravitz of Province, Inc.**

**As Liquidating Trustee**

**Dated**

**_____, 2017**

This Liquidating Trust Agreement and Declaration of Trust (the "Agreement" or the "Liquidating Trust Agreement") is entered into as of _____, effective as of the Plan's Effective Date, by and among: (a) Fresh & Easy, LLC, as debtor and debtor in possession in the Chapter 11 Case and on behalf of the Estate ("Fresh & Easy" or "Settlor"), as transferor; and (b) Peter S. Kravitz of Province, Inc., solely in his capacity as trustee under this Agreement (the "Trustee").[1]

## RECITALS

**WHEREAS**, on the Petition Date, Fresh & Easy filed a voluntary petition under chapter 11 of the Bankruptcy Code, and Fresh & Easy has continued in possession of its property and has continued to manage its affairs and wind down its business as a debtor in possession under Bankruptcy Code sections 1107(a) and 1108;

**WHEREAS**, on November 10, 2015, the UST appointed DPI Specialty Foods, Inc., United Natural Foods West, Inc., Ignited, LLC, JBS USA, and Ryder Integrated Logistics to serve on the Committee in the Chapter 11 Case, and on November 18, 2016, the UST also appointed Empress Group and MJL Capital Partners, LLC to the Committee;

**WHEREAS**, on February 1, 2017, the *Combined Disclosure Statement* (the "Disclosure Statement") *and Joint Chapter 11 Plan of Liquidation for Fresh & Easy, LLC* (the "Plan"), as it may be amended, supplemented, or modified from time to time, the "Combined Plan and Disclosure Statement") [Docket No. 1831], proposed by the Debtor and the Official Committee of Unsecured Creditors (the "Committee"), was filed with the Bankruptcy Court;

**WHEREAS**, on _____, the Bankruptcy Court entered its Order confirming the Plan pursuant to Bankruptcy Code section 1129 [Docket No. _____] (the "Confirmation Order");

**WHEREAS**, the Plan provides for the creation of this Trust and the transfer of all Liquidating Trust Assets to the Trust as of the Plan's Effective Date or as soon as reasonably practicable thereafter;

**WHEREAS**, the Trust is created for the sole benefit of the Holders of Allowed General Unsecured Claims under the Plan (the "Beneficiaries");

**WHEREAS**, the Trust is established for the purpose of collecting, liquidating, and distributing the Assets for the Beneficiaries' benefit in accordance with the Liquidating Trust Agreement and the Plan and with no objective to continue or engage in the conduct of a trade or business;

**WHEREAS**, the Trust is intended to be treated and qualify as a "grantor trust" for federal income tax purposes, and the Trustee will operate and maintain the Trust in compliance with the guidelines for obtaining a classification ruling as a liquidating trust as set forth in

---

[1] Any capitalized term not otherwise defined herein shall have the meaning set forth in the Plan.

Internal Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation Section 1.671-4(a) and all subsequent guidelines regarding liquidating trusts issued by the Internal Revenue Service ("IRS");

**WHEREAS**, for all federal income tax purposes the Plan requires the Settlor, the Trustee, and the Beneficiaries to treat the transfer of the Initial Trust Assets to the Trust as a transfer by the Settlor to the Beneficiaries in satisfaction of their Allowed General Unsecured Claims, followed by a transfer of the Initial Trust Assets by the Beneficiaries to the Trust in exchange for the beneficial interests therein, and to treat the Beneficiaries as the grantors and owners of the Trust in accordance with Treasury Regulation § 301.7701-4; and

**WHEREAS**, pursuant to the Plan, the Trustee will be deemed to be the Estate's representative in accordance with Bankruptcy Code section 1123 and will have all the rights and powers set forth in the Plan and in this Agreement, including the powers of a trustee under Bankruptcy Code sections 704 and 1106 and Bankruptcy Rule 2004;

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants contained herein and in the Plan, the Settlor and the Trustee agree as follows:

## ARTICLE I

## DEFINITIONS AND INTERPRETATIONS

1.1    The following definitions apply to the capitalized terms used in this Agreement. Any capitalized term not otherwise defined herein shall have the meaning set forth in the Plan. Terms defined in the Bankruptcy Code, and not otherwise defined in this Agreement or the Plan have the meanings set forth in the Bankruptcy Code.

1.1.1    "Assets" shall mean the Initial Trust Assets and any proceeds, revenue, or income therefrom.

(a)    "Available Trust Cash" shall mean the aggregate of the Assets after paying, reserving for, or satisfying: (a) fees due to the U.S. Trustee pursuant to 28 U.S.C. § 1930; (b) the Trust's operating and administrative expenses, including all costs, expenses, and obligations incurred by the Trustee (or professionals who the Trustee may employ in administering the Trust) in carrying out their responsibilities under the Agreement, or in any manner connected, incidental, or related thereto; (c) the Disputed Claims Reserve; (d) the Professional Fee Reserve (as provided in Article XIII.K.1 of the Plan); (e) the Administrative Claim Reserve (as provided in Article XIII.K.2 of the Plan); (f) the WARN Reserve (as provided in Article XIII.K.3 of the Plan); and (g) the Release Consideration which shall be segregated in a separate account and earmarked solely for Releasing Creditors (as provided in the Settlement and Release Agreement).

1.1.2    "Beneficiaries" shall mean, collectively, the Holders of Allowed General Unsecured Claims under the Plan, or any successors to such Holders' Allowed General Unsecured Claims or interests in the Trust.

3

1.1.3   "Initial Trust Assets" shall mean the Liquidating Trust Assets; as such term is defined in the Plan.

1.1.4   "Permitted Investments" shall include: (a) short-term direct obligations of, or obligations guaranteed by, the United States of America; (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof; (c) such other investments as the Court may approve from time to time; or (d) demand deposits or certificates of deposit at any bank or trust company; *provided, however,* that the scope of any Permitted Investments will be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold, pursuant to Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

1.1.5   "Trust" shall mean the Liquidating Trust established pursuant to the terms of this Agreement and the Plan.

1.1.6   "Trustee" shall mean: (i) initially, Peter S. Kravitz of Province, Inc.; and (ii) any successors or replacements duly appointed under the terms of this Agreement.

1.2   Interpretation.  The headings in this Agreement are for convenience only and do not affect the meaning or understanding of the Agreement or any provision hereof.  Words defined, denoted, or stated in the singular form also include the plural form and vice versa, and words defined, denoted, or stated in the masculine, feminine, or neuter form include each of the masculine, feminine, and neuter forms.  The word "including" means "including but not limited to."  The word "or" is not exclusive.

1.3   Particular Words.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to that Section or Article in this Agreement.  The words "hereof," "herein," "hereto," and similar terms refer to this Agreement and not to any particular Section or Article of this Agreement.

## ARTICLE II

## DECLARATION OF TRUST

2.1   **Creation and Name**.  There is hereby created the Trust, which shall be known as the "Fresh & Easy Liquidating Trust" and which is the Trust referred to as the Liquidating Trust in the Plan.  The Trustee may conduct the Trust's affairs under the name of the "Fresh & Easy Liquidating Trust."

2.2   **Purpose of the Trust**.  The Settlor and the Trustee, pursuant to the Plan and in accordance with the Bankruptcy Code, hereby create the Trust for the purpose of collecting, distributing, and liquidating the Assets for the benefit of the Beneficiaries in accordance with the terms of the Agreement and the Plan.  The Trust's activities will be limited to those activities set forth in this Agreement and otherwise contemplated by the Plan.  The Trustee will make

4

continuing efforts to dispose of the Assets, make timely Distributions, and not unduly prolong the Trust's duration.

2.3    **Treatment of the Trust**.  This Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust.  The Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association.  The relationship of the Beneficiaries to the Trustee will be solely that of beneficiaries of a trust and will not be deemed a principal or agency relationship, and their rights will be limited to those conferred upon them by this Agreement.

2.4    **Transfer of Initial Trust Assets.**

(a)    The Settlor hereby grants, releases, assigns, conveys, transfers, and delivers, on behalf of the Beneficiaries, all of the Settlor's right, title, and interest in the Initial Trust Assets to the Trust as of the Effective Date to be held in trust for the benefit of the Beneficiaries, pursuant to Bankruptcy Code sections 1123(a)(5)(B) and 1123(b)(3)(B) and in accordance with the Plan and Confirmation Order and free and clear of any and all liens, claims, encumbrances, and interests (legal, beneficial, or otherwise) of all other Persons and Entities to the maximum extent contemplated by and permissible under Bankruptcy Code section 1141(c) for the uses and purposes as specified in the Agreement and the Plan, but subject to the following liabilities: (i) all fees payable pursuant to 28 U.S.C. § 1930 until such time as the Court enters a final decree closing the Debtor's Chapter 11 Case; and (ii) the Trust's expenses.  The Trust will have such incidents of ownership in the Initial Trust Assets as are necessary to undertake the actions and transactions authorized under the Plan.  The transfer of the Initial Trust Assets will be exempt from any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax pursuant to Bankruptcy Code section 1146.  Upon the transfer of the Initial Trust Assets to the Trust, such assets shall become Assets of the Trust.

(b)    Notwithstanding the foregoing, if on the Effective Date any of the Initial Trust Assets cannot be transferred to the Trust, or it is deemed impractical or inadvisable to do so by the Trustee for any reason—for example, because the Trust has not yet established accounts for the purpose of holding Cash or because of a restriction on their transferability under applicable non-bankruptcy law that is not superseded by Bankruptcy Code section 1123 or any other Bankruptcy Code provision—the Debtor will continue to hold such Initial Trust Assets as bailee for the Trust's account until the Trust informs the Debtor that the Trust may receive such Initial Trust Assets, whereupon the Debtor will promptly transfer such assets to the Trust and they will become Assets; *provided, however,* that the proceeds of the sale or other disposition of any such assets retained by the Debtor (or any successors thereto) will nevertheless be deemed to constitute Initial Trust Assets and to likewise be held by the Debtor as bailee as provided herein. The Trustee may commence an action in the Bankruptcy Court to resolve any dispute regarding the allocation of the proceeds of any Initial Trust Assets retained by the Debtor (or any successors thereto) pursuant to the Plan.

(c)    On or before the Effective Date, the Debtor will deliver or cause to be delivered to the Trust any and all books and records that relate to or that may be reasonably

5

required in connection with the Initial Trust Assets, whether held by the Debtor, its agents, representatives, advisors, attorneys, accountants or any other professionals hired by the Debtor, and the Debtor will provide access (to the extent it has the power to do so) to such employees, agents, advisors, attorneys, accountants, or any other professionals hired by the Debtor and with knowledge of matters relevant to the Initial Trust Assets. The Debtor's professionals may charge the Trust their standard hourly rates for any services provided.

(d)     On or before the Effective Date, the Debtor will deliver, or cause to be delivered, to the Trust a complete list of all Claims reflected on the claims registry as of the Effective Date. For administrative, secured, and priority claims, the Debtor shall indicate whether the claim has been paid or is in dispute. In the case of disputed claims, the Debtor shall indicate the basis for the dispute, or issues open for analysis. The list will include the names and addresses of the Holders of such Claims, the amounts thereof, the amounts filed, and the estimated amounts thereof.

(e)     The Trust, as successor in interest to the Estate, may: (i) execute and deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed), and (ii) take, or cause to be taken, all such further action to evidence, vest, perfect, or effectuate the transfer of all of the Initial Trust Assets to the Trust and consummate transactions contemplated by and to otherwise carry out the Plan's intent. In addition, the Trust, as successor in interest to the Estate, will be entitled to receive and collect all tax refunds to which the Debtor or the Estate would otherwise be entitled, and all such tax refunds shall be deemed to be Assets of the Trust.

2.5     **Title to Assets**. Upon the transfer of the Initial Trust Assets, the Trust will succeed to all of the Debtor's right, title, and interest in the Initial Trust Assets and the Debtor will have no further rights or interest in or with respect to the Initial Trust Assets nor will the Debtor have any rights or interests in the Assets or the Trust. From and after the Effective Date, legal title to the Initial Trust Asset and the Assets will be vested at all times in the Trust as a separate legal entity except where applicable law in any jurisdiction in which the Trust property may be located requires title to any part of the Assets to be vested in a trustee, in which case title will be deemed vested in the Trustee. No Beneficiary will have legal title to any part of the Assets. For the avoidance of doubt, and to facilitate the sale and/or transfer of liquor licenses, all of the Debtor's rights, title and interests in liquor licenses shall be retained by Fresh & Easy, LLC.

2.6     **Situs of the Trust**. The Trust shall be located in the State of Delaware.

2.7     **Securities Law**. Under Bankruptcy Code section 1145 the issuance of beneficial interests in the Trust to the Holders of Allowed General Unsecured Claims under the Plan will be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.

2.8     **Appointment and Acceptance of Trustee**. The Trustee shall be deemed to be appointed pursuant to Bankruptcy Code section 1123(b)(3)(B). The Trustee accepts the Trust created by the Agreement and the grant, assignment, transfer, conveyance, and delivery to the

Trustee, on behalf and for the benefit of the Beneficiaries, by the Debtor of all of its respective rights, title and interests in the Initial Trust Assets, upon and subject to the terms and conditions set forth in the Agreement, the Plan, and the Confirmation Order.

2.9 **Status of Trustee**. The Trustee shall be a "representative of the estate" as that phrase is used in Bankruptcy Code section 1123(b)(3)(B) with respect to the rights and powers granted in the Agreement, the Plan, and the Confirmation Order. Except as otherwise set forth in the Plan, the Trustee shall be the Debtor's successor-in-interest solely with respect to: (A) the Initial Trust Assets, including any Liquidating Trust Claims that were or could have been commenced by the Debtor, including any actions commenced by the Committee, and shall be deemed substituted for the same as the party in such action; and (B) any objections, setoffs, defenses, or counterclaims that have been or could have been raised by the Debtor with respect to any Claim. All actions, claims, rights or interests constituting Assets are preserved and retained and may be enforced by the Trustee as the representative of the Debtor's Estate pursuant to Bankruptcy Code section 1123(b)(3)(B).

2.10 **No Reversion to Debtor**. In no event shall any part of the Assets revert to or be distributed to or for the benefit of the Debtor.

## ARTICLE III

## ADMINISTRATION OF THE TRUST

3.1 **Rights, Powers, and Privileges**. The Trustee will have only the rights, powers, and privileges expressly provided in the Agreement, the Plan, and the Confirmation Order. Subject to the terms of this Agreement, including Sections 3.4 and 11.4, the Trustee will have the power to take the actions granted in this Section 3.1 and any powers reasonably incidental thereto which the Trustee reasonably determines to be necessary or appropriate to fulfill the Trust's purpose, including:

(a) Prosecuting, settling, assigning, or otherwise compromising or abandoning for the Trust's benefit any and all Liquidating Trust Claims or claims or causes of action arising in favor of the Trust, including, without limitation, taking any action with respect to appeals, counterclaims, and defenses of or with respect to such claims and causes of action, including retaining counsel to pursue the Liquidating Trust Claims;

(b) Exercising all powers provided to the Trustee or the Trust under the Plan or Confirmation Order, including, without limitation, the right to allow, object to, or reconcile Claims asserted against the Debtor's Estate;

(c) Liquidating, selling, or abandoning the Assets or any portion thereof;

(d) Executing any documents and taking any other actions related to, or in connection with, the liquidation of the Assets and the exercise of the Trustee's powers granted in the Agreement, the Plan, and the Confirmation Order;

7

(e)    Holding legal title to any and all rights of the Beneficiaries in, to, or arising from the Assets;

(f)    Establishing the Disputed Claims Reserve, the Administrative Claims Reserve, WARN Reserve, and any supplement to the Professional Fee Reserve as may be required by Article XIII.K.1 of the Plan, as well as any other required reserves as may be necessary and appropriate for the proper operation of matters incident to the Trust;

(g)    Protecting and enforcing the rights to the Assets vested in the Trustee by the Agreement by any method reasonably determined by the Trustee to be appropriate, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

(h)    Distributing the Assets to or on behalf of the Beneficiaries in accordance with the Agreement, the Plan, and the Confirmation Order;

(i)    Making Distributions to Holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Secured Claims from the Administrative Claims Reserve in accordance with the Agreement, the Plan, and the Confirmation Order;

(j)    Making Distributions from the WARN Reserve for the payment of any Allowed WARN Act Liability in accordance with the Plan, and any order of the Court granting such allowance;

(k)    Disbursing the Release Consideration expressly earmarked solely for the Releasing Creditors (as defined in the Settlement Agreement), which Release Consideration shall be distributed on a Pro Rata basis to such Releasing Creditors in accordance with the Plan, Settlement Agreement and Confirmation Order;

(l)    Filing any and all tax returns on behalf of the Debtor and the Trust and paying taxes properly payable by the Debtor and Trust, if any;

(m)    Making all necessary filings in accordance with any applicable law, statute, or regulation, including, but not limited to, any filings on behalf of the Debtor in order to comply with corporate governance and reporting;

(n)    Determining and satisfying from the Available Trust Cash any and all taxes and ordinary course liabilities, including reasonable professional fees and expenses, incurred by or on behalf of the Trust;

(o)    Investing the Assets in accordance with Section 3.5 of this Agreement;

(p)    If the Trustee determines that the Beneficiaries or the Trust may, will, or have become subject to different tax consequences than those described in this

Agreement, taking such actions as will, or are intended to, address such different tax consequences;

(q)     Withholding from the amount allocable, payable or distributable to any Entity such amount as may be sufficient or required to pay any tax or other charge which the Trustee has determined, in his reasonable discretion, is required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof, and to pay or deposit such withheld tax with the appropriate governmental authority. In the exercise of his discretion and judgment, the Trustee may enter into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld in accordance with the provisions hereof;

(r)     Creating sub-trusts or title vehicles of which the Trust or the Beneficiaries hold the beneficial or ownership interests, as applicable;

(s)     Sending annually to each Beneficiary a separate statement stating the Beneficiary's share of income, gain, loss, deduction, or credit and instructing all such Beneficiaries to report such items on their federal tax returns;

(t)     Opening and maintaining bank accounts on behalf of or in the name of the Trust;

(u)     Purchasing customary insurance coverage in accordance with Section 3.6 of the Agreement on behalf of the Trust or the Trustee, including errors and omissions policies, to the extent the Trustee deems necessary;

(v)     In reliance upon the official claims register maintained in the Chapter 11 Case and any applicable court order, maintaining on the Trustee's books and records a register evidencing the beneficial interest in the Trust held by each Beneficiary;

(w)     Satisfying any remaining obligations related to the terminated Fresh & Easy 401(k), including, but not limited to, filing all applicable forms required by the IRS, ERISA, the 401(k), and/or applicable nonbankruptcy law, and providing all applicable notices to plan participants;

(x)     Cooperating with the purchasers of liquor licenses (and the designated escrow holder) with whom the Debtor sold, assigned, transferred, conveyed Debtor's rights, title and interests in and to certain liquor licenses, for the transfer of said liquor license, and, if necessary, maintaining corporate formalities and bank account(s) to facilitate such transactions;

(y)     Performing such functions and taking such actions as are provided for or permitted in this Agreement, the Plan, the Confirmation Order, or any other agreement executed pursuant to this Agreement, the Plan, or the Confirmation Order;

(z)     Taking any all actions or refraining from taking any actions the Trustee reasonably deems necessary for the liquidation of the Debtor, and the maximization of

the Liquidating Trust Assets consistent with the purpose of this Agreement, the Plan and Confirmation Order

              (aa)    Taking all actions necessary to effect the dissolution of the Debtor, without the need for any further Bankruptcy Court action or approval; and

              (bb)    Terminating this Trust and seeking to close the Debtor's Chapter 11 Case pursuant to Bankruptcy Code section 350(a).

3.2    **Agents and Professionals**.  The Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, or other professionals and employees as the Trustee deems appropriate in the reasonable exercise of his discretion, and who the Trustee reasonably determines to have qualifications necessary to assist the Trustee in the Trust's proper administration.  Subject to Section 8.8 of the Agreement, the Trustee may pay the reasonable fees, costs, and expenses of such persons (including himself) out of the Available Trust Cash in the ordinary course of business pursuant to the Plan and Confirmation Order.  Subject to this Section 3.2 and the other terms and conditions of this Agreement, the Plan, and the Confirmation Order, the Trustee may retain professionals who previously were employed by the Committee and/or Debtor.

3.3    **Safekeeping of Assets**.  All Assets will, until distributed or paid over as provided herein or in the Plan, be held in trust for the benefit of the Beneficiaries in accordance with the Plan and the Agreement.  The Trustee will be under no liability for interest or producing income on any moneys received by the Trust under this Agreement and held for distribution or payment to the Beneficiaries, except to the extent such interest or income is actually received by the Trust.

3.4    **Limitations on Trustee**.  The Trustee will not at any time, on behalf of the Trust or Beneficiaries, enter into or engage in any trade or business, and no part of the Assets will be used or disposed of by the Trust in furtherance of any trade or business.

3.5    **Investment**.  The Trustee may only invest funds held in the Trust in Permitted Investments in a manner consistent with the requirements of the Bankruptcy Code or any Court order modifying such requirements and, if the Trustee does so, it shall have no liability in the event of insolvency of any institution in which it has invested any of the Assets.

3.6    **Insurance**.  The Trustee may use Available Trust Cash in the Trustee's reasonable business judgment to maintain customary insurance coverage, if available, for the protection of the Assets.

3.7    **Liquidating Trust Budget**.  The Liquidating Trustee will prepare a reasonably detailed budget for the Liquidating Trust for each calendar year setting forth in reasonable detail the assumptions underlying the projected recoveries and expenses associated with the Trust's administration and anticipated Distributions to Beneficiaries. Not less than 30 days after the Effective Date, and 30 days before the beginning of each calendar year thereafter, the Trustee will submit the proposed budget to the Liquidating Trust Committee for approval.  Amendments to the budget will not become effective unless and until approved by the Liquidating Trust

Committee. Except as otherwise approved by the Liquidating Trust Committee, the amount expended in any year will not exceed by more than 15% the budgeted amount set forth in the budget for that year.

3.8    **Trustee Action**. The Trustee will hold, collect, conserve, protect, and administer the Trust in accordance with the provisions of this Agreement, the Plan, and the Confirmation Order, and will pay and distribute amounts as set forth herein for the purposes set forth in the Agreement, the Plan, and the Confirmation Order. Except to the extent that approval or consent of the Liquidating Trust Committee is required under this Agreement, any good faith determination by the Trustee as to what actions are in the best interests of the Trust will be determinative.

3.9    **Court Approval of Trustee Actions**. The Trustee will exercise his business judgment for the benefit of the Beneficiaries in order to maximize the value of the Assets and Distributions, giving due regard to the cost, risk, and delay of any course of action. Except as provided in the Plan or otherwise specified in this Agreement, the Trustee need not: (a) obtain an order from, or approval of, the Court to exercise any power, rights, or discretion conferred hereunder; or (b) account to the Court, including regarding the sale of assets or settlement of controversies; *provided, however,* that nothing in this Agreement precludes the Trustee from seeking Court approval regarding a proposed course of action in connection with the Assets, the Trust, the Agreement, the Plan, or the Debtor, including the administration and Distribution of the Assets, that does not violate Section 3.4 of this Agreement. The Court will retain jurisdiction for such purposes and will approve or disapprove any such proposed action upon motion. In addition, subject to Section 3.4 of the Agreement, the Trustee will have the authority, but not the obligation, to seek Court approval to sell any Asset free and clear of any and all liens, claims, and encumbrances.

3.10    **Confidentiality**. The Trustee will, during the period that he serves as Trustee under the Agreement and following the termination of the Agreement or his removal or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Assets relates or which he has become aware of in his capacity as Trustee.

## ARTICLE IV

## DISTRIBUTIONS TO TRUST BENEFICIARIES

4.1    **Timing and Amount of Distributions**. The Trustee will cause a Distribution of Available Trust Cash to be made to Beneficiaries as reasonably practicable after the Effective Date. The Liquidating Trust Committee will establish Periodic Distribution Dates from time to time; *provided, however,* that the Liquidating Trust will not be required to make a Distribution if doing so would leave the Trust without sufficient Available Trust Cash to maintain the value of the Assets or to meet Trust liabilities, or if the Trustee decides such Distribution would be administratively burdensome. The Trustee will not make any Distributions of Assets to the Trust Beneficiaries without retaining and reserving in the Disputed Claims Reserve such amounts as are required under Article XIV.R. of the Plan.

11

4.2    **Distributions**.  Holders of Allowed General Unsecured Claims against the Debtor will receive, in full and final satisfaction of their Allowed General Unsecured Claims, a Pro Rata share of the Available Trust Cash after the Trustee maintains appropriate reserves for Disputed General Unsecured Claims and the costs of Trust administration.  The Trustee will require any Beneficiary to furnish to the Trustee in writing with his or its Employer or Taxpayer Identification Number as assigned by the IRS, and the Trustee may condition any Distribution upon receipt of such identification number.  If a Beneficiary does not timely provide the Trustee with its taxpayer identification number in the manner and by the deadline established by the Trustee, then the Distribution to such Beneficiary shall be administered as an Unclaimed Distribution as set forth in Article XIV.K of the Plan.

4.3    **Distributions After Allowance or Disallowance of a Disputed Claim**.  Upon a Disputed General Unsecured Claim becoming an Allowed General Unsecured Claim, the Trustee will distribute to the Holder thereof, from the Disputed Claims Reserve at the time of the next scheduled Distribution, such amount of Available Trust Cash as would have been distributed to such Holder if its Claim had been an Allowed General Unsecured Claim on the Effective Date.  The Trustee will no longer reserve for and will distribute to the Beneficiaries, pursuant to this Agreement, their Pro Rata share of the funds held in the Disputed Claims Reserve on account of any Disputed General Unsecured Claim that becomes a Disallowed Claim.

4.4    **Payments Limited to Assets**.  All payments to be made by the Trustee to or for the benefit of any Beneficiary on behalf of the Trust will be made only from Available Trust Cash.

4.5    **United States Trustee Fees and Reports**.  After the Effective Date, the Trustee will pay as a Trust expense all fees incurred under 28 U.S.C. § 1930 by reason of the Trust's disbursements as required under the Plan and Confirmation Order until the Debtor's Chapter 11 Case is closed.  After the Confirmation Date, the Trust will prepare and serve on the Office of the U.S. Trustee such quarterly disbursement reports for the Trust as are required by the U.S. Trustee for as long as the Chapter 11 Case remains open.

4.6    **No Interest or Accruals**.  Except as otherwise may be expressly provided in the Plan, Holders of Claims will not be entitled to interest on the distributions provided for in this Agreement, regardless of whether such distributions are deliverable on or at any specified time after the Effective Date.

## ARTICLE V

## DISTRIBUTIONS TO HOLDERS OF
## ADMINISTRATIVE AND PRIORITY CLAIMS

5.1    **The Professional Fee Reserve**.  On or before the Effective Date, the Debtor will transfer Cash to Young Conaway Stargatt & Taylor, LLP for the benefit of Holders of Allowed Professional Fee Claims in an amount equal to the Professional Fee Estimate.  After all Professional Fee Claims are Allowed or Disallowed and the Allowed amounts of such Claims are paid by Young Conaway Stargatt & Taylor, LLP, any remaining Cash in the Professional Fee

Reserve will become Available Trust Cash. Notwithstanding any other provision in the Plan, in the event the Cash held in the Professional Fee Reserve is insufficient to satisfy the Allowed Professional Fee Claims, the Liquidating Trust shall fund the Cash necessary to satisfy any shortfall. Only Professionals employed in the Chapter 11 Case by the Debtor or the Committee will be entitled to payment from the Professional Fee Reserve.

5.2      **The Administrative Claims Reserve**.  On or before the Effective Date, the Debtor will transfer to the Trust Cash in the amount of the Administrative, Priority, and Secured Claims Estimate, which Cash will be used by the Trustee to fund the Administrative Claims Reserve. The Cash so transferred will not be used for any purpose other than to pay Allowed Administrative Claims (excluding Professional Fee Claims, which will be paid from the Professional Fee Reserve, and WARN Act Liability, which will be paid from the WARN Reserve), Priority Tax Claims, Priority Non-Tax Claims, and Secured Claims. The Trustee: (i) will segregate and will not commingle the Cash held in the Administrative Claims Reserve; and (ii) subject to the terms and conditions of the Plan and the Agreement, will pay each Administrative Claim (excluding Professional Fee Claims, which will be paid from the Professional Fee Reserve), Priority Tax Claim, Priority Non-Tax Claim, and Secured Claims on or as soon as reasonably practicable after the date such Claim becomes an Allowed Claim. After an Administrative Claim (excluding Professional Fee Claims), Priority Tax Claim, Priority Non-Tax Claim or Secured Claim is Allowed or Disallowed and the Allowed amount of any such Claim is paid by the Trust, any remaining Cash, which was allocated in the Administrative Claims Reserve for such Claim that has been satisfied, will become Available Trust Cash. Only Holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Secured Claims will be paid from the Administrative Claims Reserve.

5.3      **Distributions on the Distribution Date**.  On or as soon as reasonably practicable after the Effective Date, the Trustee will make Distributions from the Administrative Claims Reserve to Holders of Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims and Secured Claims that were Allowed Claims as of the Distribution Record Date, in accordance with Article XIII.I of the Plan.

5.4      **Distributions After Allowance or Disallowance of a Disputed Claim**.  On or as soon as reasonably practicable after a Disputed Administrative Claim, Disputed Priority Tax Claim, Disputed Priority Non-Tax Claim or Disputed Secured Claim becomes an Allowed Claim, the Trustee will distribute to the Holder thereof, from the Administrative Claims Reserve, such amount as would have been distributed to such Holder if its Claim had been an Allowed Claim on the Effective Date, in accordance with Article XIII of the Plan. The Trustee will require any Claim Holder entitled to receive a Distribution to furnish to the Trustee in writing his or its Employer or Taxpayer Identification Number as assigned by the IRS, and the Trustee may condition any Distribution upon receipt of such identification number. Failing to provide such tax identification may result in forfeiture of the Claim Holder's Distribution pursuant to Article XIV.O of the Plan.

5.5      **Distributions After Allowance or Disallowance of WARN Claims**.  If, as of the Effective Date, funds remain in the WARN Reserve, the Debtor shall transfer to the Liquidating Trust the WARN Reserve for the purposes of satisfying any and all remaining WARN Act

Liability in accordance with an order of the Court granting the allowance of WARN Claims. The Trustee will require any Claim Holder entitled to receive a Distribution from the WARN Reserve to furnish to the Trustee in writing his or its Employer or Taxpayer Identification Number as assigned by the IRS, and the Trustee may condition any Distribution upon receipt of such identification number. Failing to provide such tax identification may result in forfeiture of the Claim Holder's Distribution pursuant to Article XIV.O of the Plan. The Liquidating Trustee (i) shall segregate and shall not commingle the WARN Reserve; and (ii) the WARN Reserve shall be subject to the terms and conditions of the Plan and Settlement Agreement. Any remaining Cash in the WARN Reserve after all Allowed WARN Claims are satisfied shall become a Liquidating Trust Asset.

5.6    **Minimum Distributions; Other Limitations**. No Cash payment of less than fifty dollars $50 will be made by the Trust, as Disbursing Agent, to a Holder of an Allowed Claim on account of such Allowed Claim. If a Holder of an Allowed Claim would be entitled to receive less than fifty dollars ($50) as of the time of a particular distribution, but would be entitled to receive more than fifty dollars ($50) in combination with later distributions, the Trust, as Disbursing Agent, will combine such distribution with later distributions so that the Holder may eventually be entitled to a distribution of at least fifty dollars ($50) in value. Whenever any payment of Cash of a fraction of a dollar would otherwise be required, the actual payment may be rounded to the nearest whole dollar (up or down), with half dollars or less being rounded down.

5.7    **Abandonment; Donation**. If, in the Trustee's reasonable judgment, any Assets cannot be sold or distributed in a commercially reasonable manner or the Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries or is insufficient to render a further distribution practicable, the Trustee will have the right to cause the Trust to abandon or otherwise dispose of such property, including by donating such remaining Assets to a charitable institution qualified as a not-for-profit corporation under applicable federal and state laws, as selected by the Trustee.

## ARTICLE VI

## BENEFICIARIES

6.1    **Incidents of Ownership**. The Beneficiaries will be the sole beneficiaries of the Trust and the Assets, and the Trustee will retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized in the Agreement, the Plan, and the Confirmation Order.

6.2    **Interest Beneficial Only**. The ownership of a beneficial interest in the Trust will not entitle any Beneficiary or the Settlor to any title in or to the Assets or to any right to call for a partition or division of such assets or to require an accounting, except as specifically provided herein or in the Plan.

6.3    **Evidence of Beneficial Interest**.  Ownership of a beneficial interest in the Assets will not be evidenced by any certificate, security, or receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

6.4    **Notice of Transfer of Beneficial Interest**.  Any notice of a change of beneficial interest ownership as described in Section 13.2 of this Agreement must be forwarded to the Trustee by registered or certified mail as set forth herein.  The notice must be executed by both the transferee and the transferor, and the signatures of the parties must be acknowledged before a notary public.  The notice must clearly describe the interest to be transferred.  The Trustee may rely upon such signatures and acknowledgments as evidence of such transfer without any further investigation.

## ARTICLE VII

## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

7.1    **Reliance**.  Except as otherwise provided in the Agreement, the Plan, or the Confirmation Order, the Trustee may rely and will be protected in acting upon any resolution, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document that he reasonably believes to be genuine and to have been signed or presented by an authorized party.

7.2    **Parties Dealing With the Trustee**.  In the absence of actual knowledge to the contrary, any person dealing with the Trust or the Trustee will be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Assets.  There is no obligation on any Person dealing with the Trustee to inquire into the validity, expediency, or propriety of any transaction by the Trustee or any agent of the Trustee.

7.3    **Limited Recourse**.  Except as otherwise provided in the Agreement, the Plan, or the Confirmation Order, Persons (including any professionals retained by the Trustee in accordance with the Agreement) engaged in transactions with the Trust or the Trustee will look only to the Available Trust Cash to satisfy any liability incurred in connection with carrying out the terms of the Agreement, the Plan, or the Confirmation Order.

7.4    **Limitation of Liability**.  The Trustee, the Liquidating Trust Committee and their agents, employees, officers, directors, professionals, attorneys, accountants, advisors, and representatives will not be subject to any personal liability whatsoever, in tort, contract or otherwise, to any Person in connection with the Assets or the affairs of the Trust, except for their own gross negligence, willful misconduct, fraud, bad faith, self-dealing or breach of the duty of loyalty.  Other than as set forth in the Plan or Confirmation Order, nothing in the Agreement will be deemed to release any Beneficiary from any actions or omissions occurring prior to the Effective Date.

7.5    **Non-Liability for Acts of Others**.  Except as expressly provided in this Agreement, the Plan, or the Confirmation Order, neither the Trust nor the Trustee will assume any of the liabilities, obligations, or duties of the Debtor or the Beneficiaries.  Any successor

15

Trustee may accept and rely upon any accounting made by or on behalf of any predecessor Trustee hereunder, and any statement or representation made by a predecessor Trustee or its agents as to the assets comprising the Assets or as to any other fact bearing upon the prior administration of the Trust, so long as it has a good faith basis to do so. A Trustee will not be liable for having accepted and relied in good faith upon any such accounting, statement, or representation if it is later proved to be incomplete, inaccurate, or untrue. A Trustee or successor Trustee will not be liable for any act or omission of any predecessor Trustee, nor have a duty to enforce any claims against any predecessor Trustee on account of any such act or omission.

7.6    **Indemnification**. The Trustee, the Liquidating Trust Committee, and each of their members, agents, employees, officers, directors, professionals, attorneys, accountants, advisors, and representatives (collectively, the "Indemnified Parties") shall be indemnified and held harmless by the Trust, to the fullest extent permitted by law, solely from the Available Trust Cash for any losses, claims, damages, liabilities, and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses which the Indemnified Parties may incur or to which the Indemnified Parties may become subject in connection with any action, suit, proceeding, or investigation brought or threatened against one or more of the Indemnified Parties on account of the acts or omissions of an Indemnified Party solely in its capacity as such; *provided, however*, that the Trust will not be liable to indemnify any Indemnified Party for any act or omission constituting gross negligence, willful misconduct, fraud, bad faith, self-dealing or breach of the duty of loyalty by such Indemnified Party. Notwithstanding any provision in this Agreement to the contrary, the Indemnified Parties shall be entitled to request advances from the Trust to cover reasonable fees and necessary expenses incurred in connection with defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of an Indemnified Party in its capacity as such; *provided, however*, that the Trustee is not required to make any such advances; *provided further, however*, that any Indemnified Parties receiving such advances must repay the amounts so advanced to the Trust upon the entry of an order of a court of competent jurisdiction finding that such Indemnified Parties were not entitled to any indemnity under the provisions of this Section 7.6. This indemnification will survive the death, dissolution, resignation, or removal, as may be applicable, of the Indemnified Parties, or the termination of the Trust, and inures to the benefit of the Indemnified Parties' heirs and assigns.

## ARTICLE VIII

## SELECTION, REMOVAL AND COMPENSATION OF TRUSTEE

8.1    **Initial Trustee**. The initial Trustee will be Peter S. Kravitz of Province, Inc. or such other person as mutually acceptable to the Committee and Debtor.

8.2    **Term of Service**. The Trustee will serve until: (a) the completion of all of the Trustee's duties, responsibilities, and obligations under this Agreement and the Plan; (b) termination of the Trust in accordance with this Agreement; or (c) the Trustee's death or dissolution, incapacitation, resignation, or removal.

8.3 **Removal of a Trustee**. Any Person serving as Trustee may be removed at any time by affirmative vote of the Liquidating Trust Committee pursuant to the procedures set forth in Section 11.2 of this Agreement or upon the determination of the Court on a motion for cause shown. Any Trustee so removed is entitled to payment of reasonable fees and necessary expenses accrued prior to removal subject to the terms of this Agreement.

8.4 **Resignation of Trustee**. The Trustee may resign at any time by giving the Liquidating Trust Committee at least 30 days' written notice of his intention to do so. In the event of a resignation, the resigning Trustee must render to the Liquidating Trust Committee a full and complete accounting of monies and assets received, disbursed, and held during his term of office. The resignation will be effective on the later of: (i) the date specified in the notice; (ii) the date that is 30 days after the date the notice is delivered; or (iii) the date the accounting described in the preceding sentence is delivered.

8.5 **Appointment of Successor Trustee**. Upon the resignation, death, incapacity, or removal of a Trustee, the Liquidating Trust Committee shall, by a majority vote of those members voting, appoint a successor Trustee to fill the vacancy so created. Any successor Trustee must consent to and accept in writing the terms of this Agreement and agree that the provisions of this Agreement will be binding upon and inure to the benefit of the successor Trustee and all of the successor Trustee's heirs and legal and personal representatives, successors, or assigns. Notwithstanding anything in this Agreement to the contrary, if a successor Trustee is not appointed within 60 days of the occurrence or effectiveness, as applicable, of the prior Trustee's resignation, death, incapacity, or removal, any member of the Liquidating Trust Committee may move the Court for the appointment of a successor Trustee.

8.6 **Powers and Duties of Successor Trustee**. A successor Trustee will have all the rights, privileges, powers, and duties of the predecessor Trustee under this Agreement and the Plan.

8.7 **Trust Continuance**. The death, incapacity, resignation, or removal of the Trustee will not terminate the Trust or revoke any existing agency created pursuant to the Agreement or invalidate any action theretofore taken by the Trustee.

8.8 **Compensation and Costs of Administration.**

(a) The Trustee may retain and compensate professionals (including himself) as provided for in Section 3.2 of this Agreement. The terms of the Trustee's compensation are set forth on **Exhibit 1** hereto, which compensation may be subject to periodic increase in the discretion of the Liquidating Trust Committee.

(b) The reasonable fees and actual and necessary expenses of such professionals and the Trustee will be paid by the Trustee upon each monthly submission of a fee statement to the Trustee and/or the Liquidating Trust Committee, as applicable, in accordance with the procedures described in this Section. The Trustee must deliver his invoices or fee statements to the Liquidating Trust Committee for approval before any payment from the Available Trust Cash is allowed. Any professionals retained by the Trustee pursuant to this

17

Agreement must deliver their invoices or fee statements to the Trustee for approval before payment from the Available Trust Cash will be allowed.  The Trustee and Liquidating Trust Committee, as applicable, shall have 10 days from the delivery of any invoice or fee statement to give notice of an objection to the party seeking compensation or reimbursement.  For an objection to be valid, it must be in writing and set forth in detail the specific fees objected to and the basis for the objection.  Any objection that remains unresolved 15 days after it is made may be submitted to the Court for resolution.

    8.9    **Reporting and Filing Requirements**

        8.9.1    **Annual Reports.**  The Trust will mail or otherwise make available to all Beneficiaries an annual report of all Assets received by the Trust, all Available Trust Cash disbursed to Beneficiaries, all Assets held by the Trust, and all fees, income, and expenses related to the Trust during the preceding calendar year.

        8.9.2    **Additional Reports.**  The Trustee will also timely prepare, file, and distribute such additional statements, reports, and submissions as may be necessary to cause the Trust and the Trustee to be in compliance with applicable law.

## ARTICLE IX

## TRUST OBLIGATIONS

    9.1    **Tax Returns.**  The Trustee will file tax returns for the Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and any other applicable laws or regulations. The Trustee may, in the Trustee's sole discretion, determine the best way to report for tax purposes with respect to any reserve for Disputed General Unsecured Claims, including (i) filing a tax election to treat any and all reserves for Disputed General Unsecured Claims as a Disputed Ownership Fund ("DOF") within the meaning of Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Trust or (ii) electing to report as a separate trust or sub-trust or other entity.  If an election is made to report any reserve for disputed claims as a DOF, the Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

    9.2    **Beneficiary Statements.**  The Trustee will send each Beneficiary an annual statement setting forth the Beneficiary's share or items of income, gain, loss, deduction, or credit and will instruct all such Holders to report such items on their federal income tax returns.  Such a statement will also be sent to each Beneficiary after the Trust's dissolution.  The Trust's taxable income, gain, loss, deduction, or credit will be allocated (subject to provisions of the Plan and Confirmation Order relating to Disputed Claims) to the Beneficiaries in accordance with their relative beneficial interests in the Trust, as determined pursuant to this Agreement.

    9.3    **Valuation.**  As soon as practicable after the Effective Date, the Trustee (to the extent that he deems it necessary or appropriate in the reasonable exercise of his discretion) will,

in good faith, value the Assets, and shall apprise the Beneficiaries of such valuation. The Trustee will make the valuation available to any party with a need for that information for tax purposes. The valuation will be used consistently by all parties (including the Debtor, the Trustee, and the Trust Beneficiaries) for all federal income tax purposes. The Court will resolve any dispute regarding the valuation of the Assets.

## ARTICLE X

## MAINTENANCE OF RECORDS

10.1    **Maintenance of Records**.    The Trustee will maintain books and records containing a description of all property from time to time constituting the Assets and an accounting of all receipts and disbursements as well as the conduct of the affairs of the Trust and rights and treatment of the Beneficiaries in such detail and for such periods of time as may be necessary to enable the Trust to make full and proper accounting regarding Trust affairs and to comply with applicable provisions of law. The books and records will be open to reasonable inspection by any Beneficiary upon written request to the Trustee. Upon written request, the Trustee will furnish to any Beneficiary an annual statement of receipts and disbursements, including a summary of all income and expenses of the Trust.

## ARTICLE XI

## LIQUIDATING TRUST COMMITTEE

11.1    **Liquidating Trust Committee**.    As of the Effective Date, the Liquidating Trust Committee will be comprised of: (i) Michael Rodgers (DPI Specialty Foods, Inc.); (b) Jeff Fontaine (United Natural Foods West, Inc.); and (c) Michael Mandell (Ryder Integrated Logistics) (each a "Member" and, collectively, the "Members"). Should any of the Members resign from or otherwise cease to serve on the Liquidating Trust Committee, replacements, if any, may be selected by the remaining Members acting by majority vote.

11.2    **Liquidating Trust Committee Approval**.    Except as otherwise expressly provided herein, a majority vote of the Members will constitute an act or decision of the Liquidating Trust Committee. In the event of a tie vote, the Trustee will be deemed a voting Member for the sole purpose of breaking any such tie vote of the Liquidating Trust Committee. The Trustee may make recommendations for the action or inaction of the Liquidating Trust Committee via electronic mail on seven (7) days' notice (the "Voting Period"), and in the absence of a majority of the Members rejecting the recommendation within the Voting Period, the recommendation will be deemed to have been approved by a majority of the Members.

11.3    **Reports to Liquidating Trust Committee**.    Notwithstanding any other provision of the Agreement, the Trustee will report to the Liquidating Trust Committee as may be requested by the Liquidating Trust Committee, but not less than quarterly, and such reports will include such matters and information as reasonably requested by the Liquidating Trust Committee. The Liquidating Trust Committee will keep all such information strictly

confidential, except to the extent the Liquidating Trust Committee deems it reasonably necessary to disclose such information to the Court (in which case a good faith effort will be made to file such information under seal).

11.4    **Actions Requiring Approval of the Liquidating Trust Committee**. Notwithstanding anything to the contrary herein, the Trustee will obtain the approval of the Liquidating Trust Committee before taking any of the following actions, which approval may be by affirmative vote of the Liquidating Trust Committee or upon notice pursuant to the procedures set forth in Section 11.2 above:

    (a)    The commencement of any Cause of Action against any third parties, other than claim objections;

    (b)    The settlement, compromise, withdrawal, dismissal, or other resolution of: (i) any Claims or objections to Claims by the Trust where such resolution would result in an Allowed Claim in excess of $250,000; and (ii) any Cause of Action by the Trust where the amount sought to be recovered in the complaint or other document initiating such Cause of Action exceeds $150,000;

    (c)    The sale, transfer, assignment or other disposition of any Assets having a valuation in excess of $100,000;

    (d)    The abandonment of any Assets having a valuation in excess of $25,000;

    (e)    The borrowing of any funds by the Trust or pledge of any portion of the Assets;

    (f)    The exercise of any right or action set forth in the Agreement that expressly requires approval of the Liquidating Trust Committee;

    (g)    The amount and timing of Distributions from Available Trust Cash;

    (h)    The establishment or setting of the Disputed Claims Reserve or any other reserves in aid of distribution; or

    (i)    The payment of the Trustee's invoices.

11.5    **Liquidating Trust Committee Action in Event of Trustee Conflict of Interest**. In the event that the Trustee cannot take any action, including, without limitation, the prosecution of any Causes of Action or the objection to any Claim, by reason of an actual or potential conflict of interest, the Liquidating Trust Committee acting by a majority vote will be authorized to take any such action(s) in his place and stead, including without limitation, the retention of professionals (which may include professionals retained by the Trustee) for the purpose of taking such actions.

11.6    **Investments**. The Liquidating Trust Committee may authorize the Trust to invest the Assets in prudent investments other than those described in Bankruptcy Code section 345.

11.7    **Compensation of Liquidating Trust Committee**. The Liquidating Trust Committee Members will each receive a flat fee of $2,500 as compensation for their service, and will be entitled to reimbursement of reasonable out-of-pocket expenses incurred in the performance of their duties on behalf of the Liquidating Trust Committee.

11.8    **Standing of the Liquidating Trust Committee.** The Liquidating Trust Committee shall have independent standing to appear and be heard in the Court as to any matter relating to the Plan, the Liquidating Trust Agreement or the Estate, including any matter as to which the Court has retained jurisdiction pursuant to Article XX of the Plan.

11.9    **Function and Duration of the Liquidating Trust Committee.** The Liquidating Trust Committee shall have the rights and responsibilities set forth in the Plan and the Liquidating Trust Agreement, including instructing and supervising the Liquidating Trustee with respect to its responsibilities under the Plan and the Liquidating Trust Agreement. The Liquidating Trust Committee shall remain in existence until such time as the final Distributions under the Liquidating Trust Agreement have been made.

11.10    **Recusal of Liquidating Trust Committee Members.** A Liquidating Trust Committee member shall recuse itself from any decisions or deliberations regarding actions taken or proposed to be taken by the Liquidating Trustee with respect to the Claims, Causes of Action or rights of such Liquidating Trust Committee member, the entity appointing such Liquidating Trust Committee member, or any affiliate of the foregoing.

## ARTICLE XII

## DURATION OF TRUST

12.1    **Duration**. The Trust will become effective upon the Plan's Effective Date, and the Trust and its provisions will remain and continue in full force and effect until the Trust is terminated.

12.2    **Termination**. The Trust will terminate upon the occurrence of the earlier of: (a) the full liquidation, administration, and Distribution of the Assets in accordance with the Agreement and the full performance of all other duties and functions of the Trustee set forth in the Agreement, the Plan, and the Confirmation Order; and (b) the fifth anniversary of the Effective Date. Notwithstanding the foregoing, on or before a date not less than six months prior to such termination, the Court, upon motion by a party in interest, may extend the term of the Trust for one or more finite terms based upon the particular facts and circumstances present at that time, if an extension is necessary to the liquidating purpose of the Trust.

12.3    **Continuance of Trust for Winding Up**. After the termination of the Trust and for the purpose of liquidating and winding up the Trust's affairs, the Trustee will continue to act as Trustee until his duties have been fully performed, including, without limitation, performing

21

such post-distribution tasks as necessary to windup the affairs of the Trust at the Trust's expense. After the termination of the Trust, the Trustee will retain for a period of six months the books, records, Beneficiary lists, and other documents and files that shall have been delivered to or created by the Trustee. At the Trustee's discretion, all such records and documents may, but need not, be destroyed at any time after six months from the completion and winding up of the affairs of the Trust. Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Trust and final Distribution of the Trust, the Trustee will have no further duties or obligations hereunder. For the avoidance of doubt, the limitations on liability contained in Sections 7.3, 7.4, 7.5 and 7.6 hereof will apply to any actions taken by the Trustee during the course of winding up the affairs of the Trust.

## ARTICLE XIII

## MISCELLANEOUS

13.1    **Jurisdiction**. The Court will have exclusive jurisdiction over: (i) the Trust and the Trustee, with respect to the administration of and activities relating to the Trust; and (ii) any issues or disputes arising out of the Agreement; *provided, however*, that notwithstanding the foregoing, the Trustee will have the power and authority to bring any action in any court of competent jurisdiction to prosecute the Liquidating Trust Claims.

13.2    **Limitation on Transferability**. A beneficial interest in the Trust will be non-assignable and non-transferable except by operation of law. An assignment or transfer will not be effective until appropriate notification and proof thereof is submitted to the Trustee, and the Trustee may continue to pay all amounts to or for the benefit of the assigning or transferring Beneficiary until receipt of proper notification and proof of assignment or transfer. The Trustee may rely upon such proof without the requirement of any further investigation.

13.3    **Notices**. All notices to be given to Beneficiaries may be given by ordinary mail to the Holders at the addresses appearing on the books kept by the Trustee. Any notice or other communication which may be or is required to be given, served or sent to the Trustee must be in writing and must be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

If to the Trust/Trustee:

**Peter S. Kravitz**
**Province, Inc.**
**2360 Corporate Circle, Ste 330**
**Las Vegas, NV  89074**

With a copy to:

**Mette H. Kurth, Esquire**
**Fox Rothschild, LLP**
**1800 Century Park East, 3ʳᵈ Floor**
**Century City, CA 90067**

or to such other address as may from time to time be provided in written notice by the Trustee.

13.4    **No Bond**.  Notwithstanding any state law to the contrary, the Trustee (including any successor) will be exempt from giving any bond or other security in any jurisdiction.

13.5    **Governing Law**.  This Agreement is made in the State of Delaware, and the Trust and this Agreement, and the rights and obligations of the Trustee and the Liquidating Trust Committee are to be governed by and construed and administered according to the laws of the State of Delaware; *provided, however*, that, except as expressly provided in this Agreement, there will not be applicable to the Trust, the Trustee, the Liquidating Trust Committee or its Members, or the Agreement: (a) the provisions of Section 3540 of Title 12 of the Delaware Code; or (b) any provisions of the laws (statutory or common) of the State of Delaware pertaining to trusts which relate to or regulate: (i) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges; (ii) affirmative requirements to post bonds for trustees, officers, agents or employees of a trust; (iii) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of real or personal property; (iv) fees or other sums payable to trustees, officers, agents or employees of a trust; (v) the allocation of receipts and expenditures to income or principal; (vi) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding of Assets; or (vii) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees, which are inconsistent with the limitations or liabilities or authorities and powers of the Trustee set forth or referenced in the Agreement.

13.6    **Successors and Assigns**.  The Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

13.7    **No Execution**.  All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can bind, pledge, encumber, execute upon, garnish, or attach the Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Court.  Payment will be governed solely by the Plan and the Agreement.

23

13.8    **Delaware**.  To the extent that the terms of this Agreement are inconsistent with the terms set forth in the Plan, then the terms of the Plan will govern and control.  To the extent that the terms of this Agreement are inconsistent with the terms set forth in the Confirmation Order, then the terms of the Confirmation Order will govern and control.

13.9    **Intention of Parties to Establish Grantor Trust**.  This Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a grantor trust, and any ambiguity herein shall be construed consistent herewith, and if necessary, the Agreement may be amended to comply with such federal income tax laws, which amendments may apply retroactively.

13.10    **Amendment**.  The Trustee may, with the approval of a majority of the Members of the Liquidating Trust Committee, modify, supplement, or amend the Agreement, but only to clarify any ambiguity or inconsistency, or render the Agreement in compliance with its stated tax purposes, and only if such amendment: (i) does not materially and adversely affect the interests, rights, treatment, or Distributions of any Beneficiaries; and (ii) is not inconsistent with the Plan or the Confirmation Order.  If majority (as described above) of the Members of the Liquidating Trust Committee is unable to reach a consensus regarding a proposed modification, supplement, or amendment, the Trustee may seek Court approval of any such modification, supplement, or amendment.

13.11    **Severability**.  If any term, provision, covenant, or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement will remain in full force and effect and will in no way be affected, impaired, or invalidated.

13.12    **Integration**.  The Agreement, the Plan, and the Confirmation Order constitute the entire agreement with, by and among the parties thereto, and there are no representations, warranties, covenants, or obligations, except as set forth herein, in the Plan and in the Confirmation Order.  This Agreement, together with the Plan and the Confirmation Order, supersedes all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  Except as otherwise provided in the Agreement, the Plan, or Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of the Agreement.

13.13    **Third Party Beneficiary**.  Nothing in this Agreement is intended to benefit or create any right or cause of action in or on behalf of any person other than the parties hereto unless expressly set forth herein.

13.14    **Counterparts**.  This Agreement may be signed by the parties hereto in counterparts, which, when taken together, will constitute one and the same document.

*[Signatures Appear on Following Page]*

24

**IN WITNESS WHEREOF**, the parties have executed the Agreement (or are deemed to have so executed the Agreement) as of the day and year first written above.

**TRUSTEE**                              **FRESH & EASY, LLC**


By: _____          By: _____
      Peter S. Kravitz of Province, Inc.              Amir Agam
                                                      Chief Restructuring Officer

## EXHIBIT 1

### Trustee Compensation

Pursuant to Section 8.8 of this Agreement, this Exhibit sets forth the terms of the Trustee's compensation.

The Trustee shall be compensated for his services as Liquidating Trustee as follows:

   i.   A monthly fixed fee as outlined below:

| Period | Fixed Fee for Liquidating Trustee |
|---|---|
| Month 1 -12 | $7,500 |
| Months 13-18 | $5,000 |
| Each Additional Month | $2,500 |

   ii.   5% of non-preference related recoveries

The Trustee will also be entitled to reimbursement of actual and necessary expenses incurred. In addition, the Trustee may retain and compensate analysts from his firm to assist him with certain financial advisory related tasks as provided for in Section 3.2 of this Agreement.